**PEABODY & ARNOLD LLP**
COUNSELLORS AT LAW

30 ROWES WHARF, BOSTON, MA 02110
[617] 951.2100  FAX [617] 951.2125

BOSTON, MA   PROVIDENCE, RI

RONALD E. RITLAND
[617] 951.2011
rritland@peabodyarnold.com

March 17, 2006

**BY FACSIMILE and REGULAR MAIL**

Andrew W. Daniels, Esq.
Hinckley Allen Snyder, LLP
28 State Street
Boston, MA 02109

**BY REGULAR MAIL**
Anthony F. Rosciti, Jr.
Shannon Rosciti
15 Morgan Court
Lincoln, RI 02865

Henry V. Rosciti, Jr.
1324 Chopmist Hill Road
North Scituate, RI 02857

AHR Utility Company
Anthony F. Rosciti, Jr.
44 Maria Avenue
Johnston, RI 02919

    Re:    Principal:    South Shore Utility Contractors, Inc.
            **DEMAND UNDER AGREEMENT OF INDEMNITY**

Dear Mr. Daniels and Indemnitors:

As you know, this office represents Hanover Insurance Company which provided bonds on behalf of South Shore Utility Contractors on various jobs. On the Pawtucket Water Treatment Facility – Package #2 project, on which Hanover provided performance payment bonds on behalf of South Shore Utility Contractors to O. Ahlborg and Sons, Inc., subcontractor G. Donaldson Construction Company, Inc. filed suit against South Shore Utility Contractors and Hanover Insurance Company under the payment bond. According to the suit, Donaldson claims it is due $536,012.22 plus attorneys fees, interest and costs under the payment bond for failure of South Shore to pay that amount when due for labor and material that G. Donaldson supplied to this project.

**PEABODY & ARNOLD** LLP
Andrew W. Daniels, Esq.
March 17, 2006
Page 2

    As you know, this claim went into suit in Rhode Island and is currently pending there. Per Mr. Daniels' January 6, 2006 letter, you acknowledged on behalf of South Shore that $389,242.45 was presently due. Based on the quantities listed, it appears South Shore was claiming that it disputed $87,900.12 of the amount claimed. Despite Hanover's request that South Shore make payment on the undisputed amount, South Shore has not done so.

    Hanover is also on notice of an additional claim from Verano Bros. for $755,725.01. This is on a different phase of the project named above and Hanover provided a separate payment and performance bond on behalf of South Shore Utility Contractors. Although Mr. Daniels promised to forward documentation detailing South Shore's dispute of this claim, South Shore has not done so, despite timely request by Hanover. As you can see, these claims in total are approximately $1.3 million.

    Mr. Daniels indicated that, although South Shore was experiencing a cash flow problem, it this week received an arbitration award of $800,000 on the Yankee project, apparently a project that South Shore did in Connecticut. I demanded on behalf of Hanover that South Shore immediately use that money to make payment of the G. Donaldson claim in an amount that would get it settled. When I discussed this matter further with Mr. Daniels yesterday, he indicated that South Shore did not plan to make full payment of the G. Donaldson claim. In fact, it planned to offer an initial amount in, his words, "the six figures". South Shore planned to offer G. Donaldson payments over time, assuming an agreed amount on the claim could be reached. As I explained, this is unacceptable to Hanover.

    This will also confirm my request to meet with your client at its offices in Rhode Island at 10:00 am on Tuesday, March 21, 2006 to discuss these matters further. As I indicated, I will also want to go through completely the finances for South Shore Utility Contractors and the indemnitors.

    I have attached to this letter a copy of the Agreement of Indemnity which South Shore and the individual indemnitors executed when applying for bonds from Hanover. As you can see from the agreement, paragraph 2 sets forth the indemnitor's obligation to indemnify the surety for various claims, including the claims described above, in addition to attorney fees, interest, court costs, etc. Paragraph 3 also obligates the indemnitors to hold the surety harmless from any and all claims made under the bonds, including the claims listed above. As part of that agreement to hold the surety harmless, indemnitors agreed to place in the hands of the surety funds deemed satisfactory by the surety to hold it harmless and to hold those funds as collateral until the claims are satisfied.

    In addition, paragraph 5 provides an assignment by the indemnitors to the surety of various assets, including all monies received on any contract "whether bonded or unbonded" in which any of the indemnitors have an interest. In addition, by paragraph 7 of the indemnity

**PEABODY & ARNOLD** LLP
Andrew W. Daniels, Esq.
March 17, 2006
Page 3

agreement, the indemnitors agree to hold funds due or to become due under any bonded project in trust for payment of all obligations under the bond or the underlying contract. In other words, as the contractor receives funds on bonded projects, it will pay subcontractors and suppliers as the amounts become due. Finally, indemnitors agreed to give the surety "full and free access" to the books and records of South Shore and the indemnitors until such time as all exposure under the bonds that the surety wrote for the contractor have been extinguished or terminated.

Accordingly, Hanover Insurance Company hereby demands that the indemnitors indemnify and hold Hanover Insurance Company harmless from any and all loss, costs, attorney fees, court costs, etc. associated with it having written bonds on behalf of South Shore Utility Contractors. Specifically, Hanover demands that the indemnitors immediately place collateral in the surety's hand in the amount of $1.3 million.

In addition, the surety demands that South Shore Utility Contractors immediately act to use the arbitration award listed above and any and all other assets available to it to satisfy the claims listed above that cannot be disputed in good faith. If the claims are disputed in good faith, the indemnitors should set forth all bases for dispute, with all supporting documentation. In addition, Hanover demands that South Shore Utility Contractors and its indemnitors through their respective attorneys cooperate fully with Hanover in its investigation of these claims and Hanover's request for "full and free access to the Indemnitor's books and records..." Without limitation, this includes making all books and records for me next Tuesday as Hanover's representative.

Please contact me at your earliest convenience and in no event later than 10 days from the date of this letter to advise Hanover of your intentions concerning these indemnity obligations and demand from Hanover. Failure on your part to respond pursuant to your obligations under the indemnity agreement may leave Hanover no other option than to take such action as it deems appropriate. I look forward to hearing from you all.

Very truly yours,

Ronald E. Ritland

Enclosure

Cc:   Joseph Quinn, Esq.

PABOS2:RRITLAN:634413_1
2114-91630

ALLMERICA FINANCIAL

HANOVER INSURANCE

COPY

**The Hanover Insurance Company**          **Massachusetts Bay Insurance Company**

## AGREEMENT OF INDEMNITY

WHEREAS, at the request of the undersigned, for themselves, their heirs, executors, administrators, successors and assigns (hereafter referred to as "Indemnitors"), and upon the express understanding that this Agreement be executed, The Hanover Insurance Company and/or Massachusetts Bay Insurance Company, 100 North Parkway, Worcester, Massachusetts 01605, and their affiliates, successors, assigns and any subsidiary companies (hereafter individually and collectively referred to as "Surety") has executed, or may in its discretion hereafter execute certain surety contracts, undertakings, and/or other instruments of guarantee or indemnity, and any continuation, extension, amendment, alteration, renewal or substitution thereof (hereafter collectively referred to as "bond" or "bonds") on behalf of the Indemnitors or any one or more of the Indemnitors, in which bonds the Indemnitors hereby affirm they have a substantial, material and beneficial interest.

NOW, THEREFORE, in consideration of the premises, and of the execution or continuance of such bonds, the Indemnitors, jointly and severally, hereby covenant and agree in favor of the Surety as follows.

1. The Indemnitors will promptly pay or cause to be paid in cash to the Surety in advance, or if not in advance, in such manner as may be agreed upon, all premiums and charges of the Surety for such bonds at the rates and times specified by the Surety, and will continue to pay the same where such bonds are continued until the Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from such bonds and all liability by reason thereof.

2. The Indemnitors shall exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees:

    (a) by having executed or procured the execution of the bonds; or
    (b) in making an independent investigation of any claim, demand, or suit; or
    (c) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend the Surety; or
    (d) in enforcing any of the covenants, terms and conditions of this Agreement.

3. Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment to the Surety shall be: a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand, or suit asserted against the bond or bonds by any claimant or obligee, plus the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand, or suit; or b) if the amount asserted as a claim, demand, or suit is an unascertainable or unliquidated amount, the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand, or suit. The Surety shall have the right to hold such funds as collateral (without any obligation to earn interest on the collateral for the Indemnitors) until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees, or any other expense.

The Surety shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors. In the event of any payment or disbursement by the Surety, the Indemnitors agree to immediately reimburse the Surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety's payments at the maximum rate allowable) under the Surety's belief that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefor.

4. With respect to each bond executed by the Surety in connection with a contract, the Surety is hereby authorized, in its sole discretion, to make or guarantee advances or loans for the purpose of the contract without the necessity of seeing to the application thereof, and the Indemnitors agree both that all such loans and advances, unless repaid with legal interest by the Indemnitors to the Surety when due, shall be conclusively presumed to be an indemnity obligation of the Indemnitors to the Surety, and that the Surety shall have the absolute right to cease making or guaranteeing advances or loans at any time and without notice to the Indemnitors.

5. With respect to each bond executed by the Surety in connection with a contract, the Indemnitors hereby assign, transfer, convey and set over to the Surety:

    (a) all right, title and interest of the Indemnitors in and to all tools, plants, equipment and materials of every nature and description that may now or hereafter be upon the site of the contracted work or elsewhere for the purpose of the contract; and
    (b) all right, title and interest of the Indemnitors in and to the contract including all rights in and to all subcontracts or purchase orders let or to be let in connection therewith; and
    (c) all monies retained, due, or due in the future on account of any contract, whether bonded or unbonded, in which any or all the Indemnitors have an interest; and

(d) all right, title and interest, or use of any license, patent, trademark or copyright held by Indemnitors in connection with contracted work or required for the completion of any contract.

The assignments shall be effective as of the execution dates of the bonds, but only enforceable upon the occurrence of one or more of the events described in Paragraph 6(a-f).

6. In the event the Indemnitors, or any one or more of them, shall: (a) whether actually or allegedly (as declared by the obligee or owner), delay, default, abandon, forfeit or breach any contract secured by a bond, or (b) fail, neglect, or refuse in any manner to timely pay for any labor or material used in the prosecution of any contract secured by a bond, or (c) change its character, identity, control, beneficial ownership, or existence, or (d) fail to perform, or comply with any of the terms, covenants, or obligations of this Agreement, including, but not limited to, prompt payment of any amount due under this Agreement, or (e) make an assignment for the benefit of creditors, or have any proceedings instituted against them, or any one or more of them, alleging insolvency or involving the appointment of a receiver or trustee whether such Indemnitor(s) is/are insolvent or not, or (f) have proceedings instituted against any of the Indemnitors which have the effect of depriving any of them of the use of any part of the equipment used in connection with any contract work so as to hinder, delay, or impede the normal and satisfactory progress of the work, then the Surety, in its sole discretion, shall have the right, but not the obligation, to take possession of the work under the contract and any other contract, in connection with which the Surety has issued a bond or bond(s) and, at the expense of the Indemnitors, to complete, to arrange for completion, or to agree to the re-letting or completion by the obligee or owner of the contract work.

7. The Indemnitors covenant and agree that all funds due or to become due under any contract secured by a bond, whether in the possession of any Indemnitor or others, are held in trust for the benefit and payment of all obligations incurred in the completion of said contract for which the Surety would be obligated under the bond. The trust shall inure for the benefit of the Surety for any liability or loss under any bond, and this Agreement shall constitute notice of such trust.

8. The Surety, or its designated agents, shall have full and free access to the Indemnitors' books and records at any and all reasonable times until the liability of the Surety under any bond is completely terminated and the claims of the Surety against any Indemnitor are fully satisfied.

9. The Indemnitors irrevocably appoint the Surety as their attorney-in-fact with the power, authority and right to exercise all of the rights of the Indemnitors, or any of one or more of them, which are assigned, transferred and set over to the Surety under this Agreement, or otherwise, including, but not limited to: (a) the right to take possession of all funds due or to become due under any contract and to endorse, in the name of the Indemnitors, or any one or more of them, any check, draft, warrant, or other instruments made or issued in payment of such funds, and to disburse the proceeds thereof for the purposes of the trust provided in Paragraph 7, or in such manner which exonerates, holds harmless, and indemnifies the Surety, (b) the right to execute any other agreements or documents which the Surety, in its sole discretion, deems necessary to vest it in the title, property, and/or funds assigned by the Agreement, or otherwise, and (c) the right in its name or in the name of the Indemnitor(s), but not the obligation, to pursue, prosecute, compromise, release, or otherwise resolve any of the claims, causes of action or other rights assigned, upon such terms as the Surety, in its sole discretion, shall deem appropriate.

10. This Agreement shall constitute a Security Agreement of the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement, or under law, or in equity. A copy or reproduction of this Agreement may be filed as a Financing Statement.

11. The Surety may decline to execute any bond (including those for which any application was submitted, any bid or proposal bond was issued by the Surety, or otherwise) without impairing the validity of this Agreement, and the Indemnitors hereby waive any and all claims against the Surety due to its refusal or failure to so execute.

12. The Surety may reduce the amount of the Indemnitors' liability to the Surety under this Agreement by applying as a set off any monies due the Indemnitors by the Surety as a result of any claim any of the Indemnitors, or any entity bonded or insured by the Surety, may have against the Surety.

13. The Indemnitors waive, to the extent permitted by law, so far as their respective obligations under this Agreement are concerned, all rights to claim any property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession of the United States.

14. The Indemnitors agree to keep themselves fully informed as to the business and financial affairs of each of the other Indemnitors so that the Indemnitors are aware of the risks and hazards of continuing as Indemnitors. The Indemnitors waive notice from the Surety of any act, fact, or information coming to the notice or knowledge of the Surety concerning its rights or liabilities under any bonds executed by the Surety on behalf of Indemnitors, or any one or more of them, or the rights or liabilities of the Indemnitors, whether the Surety has such knowledge or notice before or after the execution of this Agreement.

15. The Surety, in its sole discretion, may agree or refuse to agree to any alteration, amendment, change, modification, limitation, or extension of any bond, and any renewal or other obligation in place or in lieu thereof, or of any contract (or any plans and specifications relating thereto) secured by any bond, and in any such case the Indemnitors shall be liable to the Surety as fully and to the same extent on account of any such altered, amended, changed, modified, limited or extended bond or renewal or substitution thereof, or contract, whenever and as often as made, even though such action does or might substantially increase the liability of the Indemnitors.

16. In the event the Surety procures the execution of the bonds by other sureties, or executes the bonds with co-sureties, or reinsures any portion of said bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure for the benefit of such other sureties, co-sureties and reinsuring sureties.

17. No remedy conferred upon or reserved to the Surety by this Agreement is intended to be exclusive of any other remedy or remedies, and each and every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every

right, power and remedy given by this Agreement to the Surety shall be concurrent and may be pursued separately, successively or together against any Indemnitor, or any one or more of them; and every right, power and remedy given by this Agreement to the Surety may be exercised from time to time as often as may be deemed expedient by the Surety in its sole discretion.

18. The liability of the Indemnitors under this Agreement shall not be affected by the failure of the Indemnitors to sign any bond, nor by the failure of any Indemnitor to receive notice of the execution of any bond, nor by any claim that any other indemnity or security was to be obtained, nor by the release of any indemnity, nor by the return or exchange of any collateral. If any Indemnitor to this Agreement is deemed for any reason (including, but not limited to, any defect in the execution of this Agreement by any Indemnitor) not bound thereby, the Agreement shall still be binding upon each and every other Indemnitor.

19. If any provision or provisions of this Agreement are deemed void or unenforceable under any jurisdiction governing its construction, this Agreement shall not be deemed void or unenforceable thereby, but shall continue in effect and be enforced as though the void or unenforceable provisions are omitted.

20. The Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety have been first satisfied in full.

21. This Agreement may be terminated as to any Indemnitor upon 20 days' written notice sent by registered or certified mail to the Surety at its home office at 100 North Parkway, Worcester, Massachusetts, 01605, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the bonds that may have been executed prior to such termination.

22. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

23. This Agreement applies to bonds written by the Surety at the request of or on behalf of the Indemnitors and any of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates have an interest or participation, whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

COPY

IN WITNESS WHEREOF, the Indemnitors who are individuals have hereunder set their hands and seals, and the Indemnitors which are partnerships, corporations or unincorporated associations have caused the Agreement to be duly executed by their authorized representatives on this __31__ day of __May__, in the year of __2005__.

| Address: | Indemnitor: |
|---|---|
| 44 Maria Ave | South Shore Utility Contractors, Inc. |
| Johnston, RI 02919 | (Full Name of Indemnitor) By: _____ |
| SS# or Fed. Tax ID #: 05-0515880 | (Signature and Title) Anthony F. Rosciti, Jr. (Pres.) Date of Birth (if individual): |

| Address: | Indemnitor: |
|---|---|
| 15 Morgan Court | Anthony F. Rosciti, Jr. |
| Lincoln, RI 02865 | By: _____ |
| SS# or Fed. Tax ID #: | Date of Birth: |

| Address: | Indemnitor: |
|---|---|
| 1324 Chopmist Hill Road | Henry V. Rosciti, Jr. |
| North | By: _____ |
| | Dat |

| Address: | Indemnitor: |
|---|---|
| 15 Morgan Court | Shannon Rosciti |
| Lincoln, RI 02865 | By: _____ |
| SS# or Fed. Tax ID #: | |

Instructions: If the Indemnitor is an individual, type full name, sign on next line, and fill in address, SS #, and DOB. If the Indemnitor is a corporation, type full name, impress with seal, sign on next line along with capacity of officer signing, and fill in corporate address and Fed. Tax ID #. A corporate resolution authorizing the officer to execute this Agreement should also be attached. If partnership, type firm name, with signature of the partner signing on behalf, and fill in firm address and Fed. Tax ID #. Each partner should sign as an Indemnitor.

This instrument should be dated, each signature block filled out completely, and all signatures must be properly acknowledged in the presence of a Notary Public. Attach additional signature blocks and acknowledgement forms if necessary.

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF .......RI.................................................

COUNTY OF................................................. SS

On this ....31.......day of .....May............................, in the year ......2005........., before me personally came ............Anthony F. Rosciti, Jr.................................................................................................................., to me known and known to me to be the individual who executed the foregoing instrument and who duly acknowledged to me that ....he executed the same.

Notary Public: ...../s/.........................
Address and telephone no.: ....Johnston RI   640-9131....
Commission expires: ......2-14-07..............

## PARTNERSHIP ACKNOWLEDGMENT

STATE OF .................................................

COUNTY OF................................................. SS

On this .............day of .................................., in the year ......................, before me personally came ............................................................................................................................................, to me known and known to me to be one of the firm of................................................................................... and acknowledged to me that ....he executed the foregoing instrument as the act of said firm.

Notary Public: ................................................
Address and telephone no.: ................................................
Commission expires: ................................................

COPY

## CORPORATE ACKNOWLEDGMENT

STATE OF .......RI.................................................

COUNTY OF................................................. SS

On this ....31.......day of .....May............................, in the year ......2005........., before me personally came ............Anthony F. Rosciti, Jr.................................................................................................................., to me known, who, being by me duly sworn, deposes and says that ....he resides in ....Lincoln, RI........., that ....he is the .......President.....................of ....South Shore Utility Contractors, Inc.......... the corporation described in and which executed the foregoing instrument; that ....he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that ....he signed h.... name thereto by like order.

Notary Public: ...../s/.........................
Address and telephone no.: ....Johnston RI   640-9131....
Commission expires: ......2-14-07..............

☐ The Hanover Insurance Company          ☐ Massachusetts Bay Insurance Company

## ADDENDUM TO AGREEMENT OF INDEMNITY

IN WITNESS WHEREOF, the Indemnitors who are individuals have hereunder set their hands and seals, and the Indemnitors which are partnerships, corporations or unincorporated associations have caused the Agreement to be duly executed by their authorized representatives on this __31__ day of __May__, in the year of __2005__.

Address: __44 Maria Ave__  
__Johnston, RI 02919__  
SS# or Fed. Tax ID #: __05-0515804__

Indemnitor: __AHR Utility Corp.__  
(Full Name of Indemnitor)  
By: _____  
(Signature and Title) Anthony F. Rocciti, Jr.  
Date of Birth (if individual): ████

Address: _____  
SS# or Fed. Tax ID #: _____  
Indemnitor: _____  
By: _____  
Date of Birth: _____

Address: _____  
SS# or Fed. Tax ID #: _____  
Indemnitor: _____  
By: _____  
Date of Birth: _____

Address: _____  
SS# or Fed. Tax ID #: _____  
Indemnitor: _____  
By: _____  
Date of Birth: _____

Address: _____  
SS# or Fed. Tax ID #: _____  
Indemnitor: _____  
By: _____  
Date of Birth: _____

Address: _____  
SS# or Fed. Tax ID #: _____  
Indemnitor: _____  
By: _____  
Date of Birth: _____

Address: _____  
SS# or Fed. Tax ID #: _____  
Indemnitor: _____  
By: _____  
Date of Birth: _____

COPY

INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____RI_____
COUNTY OF _____ } SS.:

On this __31__ day of __May_____, in the year 19 _2005_, before me personally come(s)
Henry V. Rosciti, Jr.
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me
that _____he_____ executed the same.

(Signature and title of official taking acknowledgment)

INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____RI_____
COUNTY OF _____ } SS.:

On this __31__ day of __May_____, in the year 19 _2005_, before me personally come(s)
Shannon Rosciti
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me
that _____he_____ executed the same.

(Signature and title of official taking acknowledgment)

CORPORATE ACKNOWLEDGMENT

STATE OF _____RI_____
COUNTY OF _____ } SS.:

On this __31__ day of __May_____, in the year 19 _2005_, before me personally come(s)
Anthony F. Rosciti, Jr.
me known, who, being by me duly sworn, deposes and says that he resides in the City of ____Lincoln, RI____
that he is the ____President____ of the ____AHR Utility Corp.____
e corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the
id instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name
ereto by like order.

CORPORATE ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS.:

On this _____ day of _____, in the year 19 ____, before me personally come(s)
_____
me known, who, being by me duly sworn, deposes and says that he resides in the City of _____
that he is the _____ of the _____
e corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the
id instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name
ereto by like order.

CORPORATE ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } SS.:

COPY

On this _____ day of _____, in the year 19 ____, before me personally come(s)
_____
me known, who, being by me duly sworn, deposes and says that he resides in the City of _____
that he is the _____ of the _____
e corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the
id instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name
ereto by like order.

# THE HANOVER INSURANCE COMPANY
# MASSACHUSETTS BAY INSURANCE COMPANY

## RESOLUTION

### Ratifying/Execution of General Indemnity Agreement

At a **SPECIAL** meeting of the Board of Directors of the **AHR Utility Corp.** (hereinafter called Company), duly called and held on the **31st** day of **May** 19**2005**, a quorum being present, the following Preambles and Resolutions were adopted:

"Whereas, this Company is materially interested through **Common Ownership** in transactions in connection with which **South Shore Utility Contractors, Inc.** (hereinafter called the Principal) has applied or may hereafter apply to The Hanover Insurance Company and/or the Massachusetts Bay Insurance Company, (hereinafter called Surety) for bonds or undertakings; and

WHEREAS, the Surety is not willing to execute such bonds or undertakings as surety unless it receives the written indemnity of this Company;

RESOLVED, that this Company hereby has requested/intends to request the Surety to execute or procure to be executed such bonds, undertakings and instruments of guarantee as said Principal may require in connection with its business and to renew or continue the same from time to time.

RESOLVED FURTHER, that officers authorized to execute documents on behalf of this Company, be and hereby are authorized and empowered to execute and/or ratify the execution and indemnity agreement or agreements required by the Surety as consideration for the execution by it of any bond or undertaking on behalf of said Principal.

RESOLVED FURTHER, that the said officers be and hereby are authorized and empowered, at any time prior or subsequent to the execution by said Surety of any such bonds or undertakings, to execute any and all amendments to said indemnity agreement or agreements and to execute any other or further agreements relating to any such bonds or undertakings or to any collateral that may have been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety in the premises."

I, **Anthony F. Rosciti, Jr.**, Secretary of the **South Shore Utility Contractors, Inc.** have compared the foregoing preambles and resolutions with the original thereof, as recorded in the Minute Book of said Company, and do certify that the same are correct and true transcripts therefrom, and the whole of said original preambles and resolutions.

Given under my hand and the seal of the Company, in the City of **Johnston**, State of **RI** this **31** day of **May 2005**

COPY

_____
SECRETARY