UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

THE HANOVER INSURANCE GROUP
Plaintiff

v.

ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION
Defendant

CIVIL ACTION NO. 1:06-cv-00276-T-LDA

**PLAINTIFF, THE HANOVER INSURANCE GROUP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO CONSOLIDATE**

NOW COMES, plaintiff, the Hanover Insurance Group ("Hanover"), by and through counsel and hereby submits the following memorandum in support of its motion to consolidate, under Rule 42(a) of the Federal Rules of Civil Procedure, this action ("Hanover Action") with the action entitled Anthony F. Rosciti, Jr. and Shannon B. Rosciti v. The Hanover Insurance Group; South Shore Utility Contractors, Inc. by and through Jonathan M. Savage, Esq., duly appointed permanent receiver of South Shore Utility Contractors, Inc.; Henry V. Rosciti; and A.H.R. Utility Corporation ("Rosciti Action"). On or about September 1, 2006, the Rosciti Action was removed from state court in Providence County, Rhode Island (C.A. #: PC06-4021) to this Court under Cause of Action No. 06-392T.

**Procedural Posture**

Hanover filed the instant action on June 12, 2006 before this Court. Defendants to this action, Anthony F. Rosciti, Jr. and Shannon B. Rosciti (collectively as "Roscitis"), filed a motion

to dismiss this action pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure on or about August 1, 2006.

Also on August 1, 2006, Roscitis' filed the Rosciti Action in Providence Superior Court referenced above, against Hanover, and also against others as nominal parties.[1] Hanover was served with the complaint on or about August 8, 2006. Hanover filed its timely Notice of Removal of the Rosciti Action on or about September 1, 2006. A true and accurate copy of the Notice of Removal is attached to this Memorandum as Exhibit 1. A true and accurate copy of the Roscitis' Complaint is attached to this Memorandum as Exhibit 2. Hanover's motion for consolidation seeks to consolidate the Hanover Action with this timely removed Rosciti Action.

**Relevant Facts**

South Shore Utility Contractors, Inc. ("South Shore") was a utility contractor doing, among other things, public jobs requiring surety bonds in Rhode Island. In early 2005, South Shore came to Hanover seeking surety bonds. Among other things, Hanover is in the business of providing surety bonds to certain qualified contactors.

As partial consideration for Hanover agreeing to write bonds on behalf of South Shore, Indemnitors Roscitis, Henry Rosciti, AHR Utility Corporation ("AHR") and South Shore executed an Agreement of Indemnity, dated May 31, 2005, in favor of Hanover. Among other things, the Indemnitors agreed to, jointly and severally, indemnify and hold harmless Hanover

[1] By Order dated on or about August 25, 2006, the Rhode Island State Superior Court consolidated the Rosciti Action with a previously filed receivership action pending in Providence Superior Court. This receivership action was initiated by a petition of Anthony F. Rosciti, Jr. against South Shore Utility Contractors, Inc. The Order of this Court was clarified by subsequent order dated September 8, 2006 whereby the Court specifically ordered that the consolidation was a procedural consolidation for purposes of administrative convenience only.

from all loss, costs, attorney fees, etc. occasioned by its having written bonds on behalf of South Shore.

In reliance of these promises, Hanover wrote performance and payment bonds for South Shore on two projects ("Bonds"). Hanover wrote a total of five bonds on a project known as the Pawtucket Water Treatment Facility ("Pawtucket Project") totaling $7,640,000. Hanover also wrote performance and payment bonds on an Amtrak project in Pawtucket, Rhode Island ("Amtrak Project") in the amount of $365,900. Overall, Hanover expects losses of nearly $2 million on these projects, net of remaining contract funds on each.

By letter dated March 17, 2006, after Hanover had received various claims of labor and material suppliers under its payment bonds totaling at least $1.3 million, Hanover made a demand for collateral in the amount of $1.3 million against all Indemnitors, as specifically provided for in the Indemnity Agreement. The Indemnitors refused to post collateral with Hanover. By letters dated May 21, 2006, Hanover wrote to the obligees on the Pawtucket Project and Amtrak Project and asked each not to pay any additional contract funds to South Shore without Hanover's prior, written consent.

By letter dated April 13, 2006, from the Indemnitors to Hanover, the Indemnitors each acknowledged that they were presently financially unable to perform their obligations under the relevant construction contracts and bonds and were in default under the bonds and Indemnity Agreement. Indemnitors expressly reaffirmed their joint and several obligations under the Indemnity Agreement. In addition, by letters also dated April 13, 2006, South Shore wrote to the owners/obligees on the Pawtucket Project and the Amtrak Project to irrevocably and voluntarily terminate their construction contracts with each effective upon receipt of the letter. Further, South Shore irrevocably directed all payments due or to come due under the contracts be made

payable solely at the direction of Hanover. In addition, South Shore abandoned each of the projects on or about April 7, 2006.

In the Hanover Action, Hanover makes claim against the Roscitis, Henry Rosciti and AHR as joint and several obligors under the Indemnity Agreement on counts of breach of contract, declaratory relief and specific performance, all related to the losses and expenses Hanover has or will incur under the Bonds and their obligations to reimburse Hanover under the Indemnity Agreement. On August 1, 2006, the Rosciti Action was filed in Rhode Island Superior Court against Hanover as defendant. In addition, the Roscitis named Henry Rosciti, AHR and South Shore, through the receiver, as "nominal" defendants. The Roscitis seek declaratory relief detailing its obligations under the Indemnity Agreement to Hanover. The Roscitis also allege against Hanover solely, breach of contract and causes of action sounding in various torts, all relating to Hanover's alleged conduct under the Bonds and under the Indemnity Agreement, and specifically relating to its letter dated March 21, 2006 directed to the obligees on the Pawtucket Project and Amtrak Project, cited above. Specifically, the Roscitis seek relief that Hanover is not entitled to its indemnity from them and, in fact, the Roscitis should recover damages from Hanover due to Hanover's conduct. The Roscitis state no cause of action and seek no relief against any of the other defendants in that action.

In their Answer to the Rosciti Action, defendants AHR and Henry Rosciti admit all of the pleading allegations made by Roscitis in their Complaint against Hanover, and at the conclusion of their responses to each count, these defendants demand judgment against Hanover on their own behalf. A true and accurate copy of this Answer is attached to this memorandum as Exhibit 3. In other words, they seek, as named co-defendants, the very same relief that plaintiffs Roscitis

seek in its Complaint against Hanover. Recently, South Shore, through the receiver has filed an Answer with this Court to the Rosciti.

## ARGUMENT

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Hanover moves this Court to consolidate the Rosciti Action, recently removed to this Court, with the Hanover Action. Rule 42(a) states:

> "Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

Consolidation is especially appropriate under Rule 42(a) where, as here, both actions involve the same underlying facts, the same common parties and the same legal issues. The First Circuit Court of Appeals, in the case of Seguro DeServicio Dee Salud De Puerto Rico v. McAuto Systems Group, Inc., 878F. 2nd 5, 9 (1st Cir. 1989), set forth the framework to be followed when considering a motion to consolidate:

> "Jurisdictions that recognize the court's power to order consolidation use a straight forward two-part framework to review exercises of that power (citations omitted). The threshold issue is whether the two proceedings involve a common party and common issues of fact or law. (citation omitted). Once this determination is made, the trial court has broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate. (citation omitted). A motion for a consolidation will usually be granted unless the party opposing it can show "demonstrable prejudice." (citation omitted).

See also Gilliam v. Fid. Mgmt. and Research Co. 2005 U.S. Dist. LEXIS 10478 (D. Mass. 2005); Tiernan v. Westext Transport, Inc. 295 F. Supp. 1251, 1253 (D. R. I. 1969) ("where, as here, there are totally identical facts and legal theories involved in the various actions, consolidation seems appropriate."); Storlazzi v. Bakey, 1995 U.S. App. LEXIS 30146 (1st Cir. 1995); Brown v. Biogen Idec, Inc., 2005 U.S. Dist. LEXIS 19350 (D. Mass. 2005);

Baystate HMO Mgmt. v. Tingley Sys., 152 F. Supp. 2d 95 (D. Mass. 1995); Johnson v Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1989) ("In the exercise of discretion, courts have taken the view that considerations of economy favor consolidation").

In this action, Hanover filed its Hanover Action first against Indemnitors Rosciti, Henry Rosciti and AHR, based on its rights under the Indemnity Agreement. Each defendant executed the Indemnity Agreement in favor of Hanover and Hanover relied on this document before agreeing to write bonds on behalf of South Shore. Hanover now contemplates a $2 million loss under these bonds.

In response, rather than file its answer and any compulsory counterclaims to this action, the Roscitis filed a separate state court action. In its Rosciti Action, the Roscitis named Hanover as the sole substantive defendant and all of the other Indemnitors (Henry Rosciti, AHR and South Shore) as "nominal" defendants. The Roscitis seek declaration of its rights and obligations under the Indemnity Agreement, assert a breach of the Indemnity Agreement by Hanover and assert various tort actions in an effort to offset Hanover's indemnity claim against the Roscitis.

In other words, both causes of action arise out of the same facts and involve the same parties.[2] Hanover wrote surety bonds on behalf of South Shore based upon the Indemnity Agreement signed by Indemnitors Roscitis, Henry Rosciti, AHR and South Shore. Hanover has and will suffer loss and expense under those bonds and seeks, in the Hanover Action, reimbursement from the Indemnitors for its loss. In response, the Roscitis assert, in the Rosciti

[2] In its action before this court, Hanover filed suit against Indemnitors Roscitis, Henry Rosciti and AHR, and not indemnitor South Shore. South Shore had been petitioned into receivership prior to Hanover filing its action. Pursuant to the receivership action, the receiver set up a

Action, that in adjusting the claims under the bonds, Hanover acted improperly, and, thus Hanover's claim for reimbursement should be defeated. In their Answer to the Rosciti Complaint, Henry Rosciti and AHR, although they file no crossclaim, attempt to seek the same relief against Hanover as do the Roscitis.

Factors of judicial economy, convenience, time and expense savings strongly weigh in favor of consolidation of these two actions. All potential witnesses are witnesses in both actions. With consolidation, there will be one trial of all claims before one jury. Consolidation of these two actions will substantially reduce the judicial time and resources required to manage and try the two cases. This Court will be able to coordinate the pretrial schedule, and address any disputes that may arise in both cases in a single hearing. Consolidation will be a more cost effective and least time-consuming exercise for both parties. As the court in Johnson v. Mississippi Barge Line Co., 34 F.R.D. 140, 142 (W.D. Pa. 1963) stated:

> "It is fundamental that the law frowns upon multiplicity of litigation, particularly under our Federal Rules of Civil Procedure, and particularly where the court may order the consolidation of all actions involving common questions of law or fact in order to avoid unnecessary costs and delay."

Clearly, the interests of justice support consolidation of these two cases. The parties are the same and the underlying facts in each are the same. Indeed, the Rosciti Action is a mirror image of the Hanover Action.

In fact, as stated above, the claims asserted by the Roscitis in the Rosciti Action are essentially compulsory counter-claims to the Hanover Action. Rule 13 (a) of the Federal Rules of Civil Procedure states:

---

uniform and orderly system for all creditors of South Shore to file its claim in the receivership action. In addition, South Shore was not an indispensable party to the Hanover Action.

> Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

"When a part violates Rule 13(a) by bringing a second action rather than filing a compulsory counterclaim in the first action, 'normally, the first suit should have priority, absent a showing of balance of convenience in favor of the second action.' 3 Moore's Federal Practice P 13.14[2] at 13-87 (2d. ed. 1993)." Laughlin v. Edwards Business Machs., 155 FRD 543,545 (W.D. Va. 1994). In this case, the defendant, rather than assert counterclaims to plaintiff's action in federal court, filed three separate actions in state court in another state. The court found the facts and legal issues all arose out of the same asset purchase agreement between the parties. The court ordered the removed state court actions transferred and consolidated with plaintiff's action. The court stated: "Consolidation and transfer is appropriate and serves the interests of justice. 'To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different courts leads to wastefulness of time, energy and money that §1404(a) was designed to prevent.' Continental Grain Co. v. Barge FBL-585, 364 U.S. 19 … (1960)." The same reasoning applies to this case where the Roscitis filed their action in state court rather than assert compulsory counterclaims to the Hanover Action in this Court.

In the case of Internet Law Library Inc. v. Southridge Capital Management, LLC, 208 F. R. D. 59 (D. S. D. N. Y. 2002), plaintiff brought action against defendant in the Southern District of Texas Federal Court. The defendant in that action then filed its own suit against plaintiff in the Federal Court for the Southern District of New York based on the same facts and issues. The

plaintiff moved the court to transfer the Texas case to the Southern District of New York for consolidation with that action.

Finding that both actions shared common questions of law and fact and the same parties, such that there was little risk of confusion or prejudice to the parties, the court ordered that the transfer and consolidation of the cases. In doing so, the court noted that the two actions shared common questions of law and fact and the actions were "logically connected" to such a degree to make the claims of defendant a compulsory counter-claim in the first action filed by plaintiff. Internet Law Library at 63.

According to the court, the defendant's filing of a separate action in lieu of asserting a compulsory counter-claim does "contravene the purpose of the Rule in that it creates a multiplicity of actions, wastes judicial resources, and unduly burdens the litigation process." Internet Law Library at 63 (quoting from Adam v. Jacobs, 950 F. 2nd 89, 93 (2nd Cir.) 1991).

The court noted that: "When faced with such a situation, courts have a number of options at their disposal. 'Where a party institutes a section action based upon a compulsory counterclaim in a still pending action, courts can use the procedural devices of transfer, stay and consolidation to avoid multiple litigation and to effectuate the Rule." Internet Law Library at 63, quoting from Cyprus Corp. v. Whitman, 93 F.R. D. 598, 604-605 (D. S.D.N.Y. 1990). The court, instead of staying the New York action and granting leave to defendant to refile its claims as counterclaims in the Texas action, decided to obtain the same result by consolidating the two actions in New York and designating the plaintiff in the first-filed Texas action as a plaintiff in the consolidated action.

In this case, as in the cited cases, the facts and parties are the same in both actions. The claims of Hanover and Roscitis are logically connected in that both arise out of the same

Indemnity Agreement and same underlying facts. The same evidence will be involved in either supporting or refuting the parties' opposing claims. In similar fashion to these cases, rather than Hanover seeking a stay of the state court action filed by the Roscitis and requiring Roscitis to re-file its claims as counterclaims to Hanover's action before this Court, Hanover is asking this Court to more efficiently achieve the same result by consolidating the two actions and designating Hanover as plaintiff in the consolidated action.

Finally, as these two actions involve the same parties and the same facts, there can be no showing or prejudice to the Roscitis by consolidating these actions. These actions were both filed in the last few months and are at very preliminary stages. No discovery has been conducted in either case. As the case simply hinges on Hanover's right to indemnity under the Indemnity Agreement vs. Roscitis' mirror allegations that it is not so entitled because of Hanover's alleged breach and wrongful actions, there is simply no chance that the consolidated action will dive the parties into confusion. In fact, this consolidation benefits all parties by bringing all claims and counterclaims before one court for one trial, rather than allowing each to proceed forward on parallel tracks. The additional costs and inefficiencies if these cases are not consolidated would be prejudicial to all parties.

## CONCLUSION

Hanover first filed the Hanover Action under the Indemnity Agreement against the Indemnitors in this Court. Rather than answer the complaint and file all compulsory counter-claims, the Roscitis filed the Rosciti Action in state court. Hanover has now removed the Rosciti Action to this Court and seeks consolidation of these two actions.

The case law construing Federal Rule of Civil Procedure 42(a) clearly favor consolidations as a method of promoting judicial economy. In addition, Federal Rule of Civil

Procedure 13(a) supports this notion of judicial economy by forcing parties to assert compulsory counterclaims to an action rather than filing, as the Roscitis did here, a separate state court action to assert the very same claims. Given the identity of facts, parties and legal questions presented in this case, the notion of judicial economy and the interests of justice mandate consolidation.

As it is beyond question that the convenience of all parties, judicial economy, savings and time, effort and expense favor consolidation of these actions, and as there can be no showing of prejudice to Roscitis under these facts, this motion for consolidation should be granted.

WHEREFORE, for the foregoing reasons, Hanover respectfully prays that this Court enter an order consolidating this action with the removed action filed by the Roscitis namely, cause of action 06-392T, and such other relief as this Court may deem fair, just and reasonable.

Respectfully submitted,

THE HANOVER INSURANCE GROUP

By their attorney,

/s/ Kevin C. Cain
Kevin C. Cain, #3960
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
[617] 951.2100

Dated: September 15, 2006

**CERTIFICATION OF SERVICE**

I hereby certify that on this 15th day of September, 2006, the foregoing was filed electronically and is available for viewing and downloading from the ECF system.

A copy has also been served upon Christopher Mulhearn, Ferrucci & Russo, P.C.; Joseph DeAngelis, Tillinghast Licht, LLP.; and Jonathan Savage of Shechtman, Halperin, Savage, LLP by first-class, postage pre-paid mail on the same date.

/s/ Kevin C. Cain
Kevin C. Cain

PABOS2:RRITLAN:645311_1
2114-91630