UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE HANOVER INSURANCE GROUP, :
:
Plaintiff :
:
vs. : C.A. No.: 06-276/T
:
ANTHONY F. ROSCITI, JR.; SHANNON ROSCITI; HENRY V. ROSCITI; and A.H.R. UTILITY CORPORATION, :
:
Defendants :

ANTHONY F. ROSCITI, JR. & SHANNON ROSCITI'S
PRE-TRIAL CONFERENCE STATEMENT

NOW COMES Defendants, Anthony F. Rosciti, Jr. ("A. Rosciti") and Shannon B. Rosciti ("S. Rosciti") (collectively, the "Roscitis"), and each of them, by and through counsel, pursuant to that certain Pre-Trial Notice, dated July 25, 2007, as amended, and hereby submit their Pre-Trial Conference Statement in connection with the above-entitled action.

Pertinent Facts

In or about 2005, The Hanover Insurance Company ("Hanover") furnished performance and payment bonds on behalf of its principal, South Shore Utility Contractors, Inc. ("South Shore"), naming Earth Tech and O. Ahlborg and Sons, Inc. (collectively, "Earth Tech"), respectively, as obligees for that certain project known as the Pawtucket Water Treatment Facility (the "Pawtucket Project") in the total amount of Five Million Six Hundred Sixteen Thousand Thirty Dollars and 00/100 ($5,616,030.00) (the "Pawtucket Project Bonds"). In addition, at or about that same time, Hanover furnished a payment and performance bonds or on behalf of its principal, South Shore, naming the Amtrak-National Railroad Passenger Corporation ("Amtrak")

as obligee for a project known as the Freight Rail Improvement Project, twenty-four (24) inch water main relocation in Providence, Rhode Island (the "Amtrak Project") in the amount of Three Hundred Sixty-Five Thousand Nine Hundred Dollars and 00/100 ($365,900.00) (the "Amtrak Project Bonds").

In or about May, 2005, South Shore, the Roscitis, Henry Rosciti ("H. Rosciti") and A.H.R. Utility Corporation ("AHR"), and each of them, executed an Agreement of Indemnity in favor of Hanover relative to the Pawtucket Project Bonds and the Amtrak Project Bonds, respectively.

Subsequent to the commencement of the Pawtucket Project and Amtrak Project, respectively, and during South Shore's discharge of its scope of work in connection with these projects, South Shore had disputes with two (2) of its subcontractors regarding payment. One of the disputes involving the Pawtucket Project related to measurement and payment terms in a subcontract (the "Pawtucket Dispute"). South Shore ultimately resolved the Pawtucket Dispute.

The only other dispute involved the Amtrak Project, wherein a subcontractor was applying payments on the Amtrak Project and other "bonded" work to only outstanding requisitions on "non-bonded" projects, thus creating an inflated receivable on the Amtrak Project (the "Amtrak Dispute"). South Shore's records supported its position with regard to the Amtrak Dispute. Hanover had knowledge that South Shore had settled the Pawtucket Dispute and that South Shore's records supported South Shore's position relating to the Amtrak Dispute.

Despite the settlement of the Pawtucket Dispute, and the good faith position advanced by South Shore relative to the Amtrak Dispute, Hanover wrongfully, tortiously and in bad faith took it upon itself to communicate directly with the owners on both the Pawtucket Project and the Amtrak Project, respectively, and notify those owners not to make any further payments to the

South Shore. With all income from the Pawtucket and Amtrak Disputes cut-off, South Shore no longer had the ability to conduct an otherwise successful business.

South Shore's principal was able to secure a take-over arrangement that ensured the completion of the Pawtucket and Amtrak Projects despite Hanover's action; however, South Shore had no ability to continue in its business, and was ultimately petitioned into a Rhode Island Superior Court receivership proceeding as a result of South Shore's direction to the owners of the Pawtucket Project and Amtrak Project, respectively, not to remit any further funds to South Shore, thereby resulting in South Shore's "flow of funds" relative to these projects being "cut off".

**The Roscitis' Claims**

1. Breach of contract

In order to recover for breach of contract at trial, the Roscitis will be required to demonstrate: (1) that the Roscitis and Hanover had a legally valid, binding and enforceable agreement; (2) that Hanover breached its agreement with the Roscitis; and (3) that the Roscitis (and/or their company, South Shore) have been damaged or harmed as a result of Hanover's breach of the parties' agreement. *Coll v. PB Diagnostic Systems, Inc.*, 50 F. 3d 1115, 1122 (1st Cir. 1995); *Michelson v. Digital Financial Services, Inc.*, 167 F. 3d 715, 720 (1st Cir. 1999).

The elements of a contract are offer, acceptance, consideration, mutuality of agreement and mutuality of obligation. *See, generally, Smith v. Boyd*, 553 A. 2d 131 (R.I. 1989); *Lamoureux v. Burrillville Racing Assn.*, 161 A. 2d 213 (R.I. 1960). The court must make "the predicate findings of offer, acceptance, consideration and breach requisite to determining a breach of contract claim." *Gorman v. St. Raphael Academy*, 853 A. 2d 28, 33 (R.I. 2004).

Generally, the question of whether a party to a contract has substantially performed or materially breached its obligations is usually a question of fact for a jury to resolve after considering all of relevant evidence. *Verizon Connected Solutions, Inc. v. Starlight Communications Holding, Inc.*, 2004 U.S. Dist. LEXIS 15847 *11 (D. R.I. 2004). *See also*, *Women's Dev. Corp. v. City of Central Falls*, 764 A. 2d 151, 158 (R.I. 2001); *URI Congregation Partners, L.P. v. Bd. of Governors for Higher Educ.*, 915 F. Supp. 1267, 1285 D. R.I. 1996) (citing *Nat'l Chain Co. v. Campbell*, 487 A. 2d 132, 135 (R.I. 1985).

2. Tortious interference with contract

The elements of a claim for interference with an advantageous business relationship consist of: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." *Am. Private Line Servs., Inc. v. E. Microwave, Inc.*, 980 F. 2d 33, 36 (1st Cir. 1992). *See also*, 45 Am. Jur. 2d *Interference* Section 48 (stating elements of a claim for tortious interference with a business relationship as (1) "the existence of a valid business relation or expectancy"; (2) "knowledge of the relationship or expectancy on the part of the interferer"; (3) "intentional and unjustified act of interference on the part of the interferer"; (4) "proof that the interference caused the harm sustained"; and (5) "damage to the party whose relationship or expectancy has been disrupted").

Furthermore, "to establish an advantageous business relationship, … [the claimant] need not prove that it had a binding contract." *Am. Private Servs., Inc.*, 980 F. 2d at 36. Rather, "[a]

probable future business relationship anticipating a reasonable expectancy of financial benefit will suffice." *Id.* at 36.

3. Tortious interference with prospective business advantage

The tort of interference with prospective contractual relations "is known by different names in different jurisdictions, for example, interference with prospective economic advantage, inducing refusal to deal, interference with reasonable expectancy or business relations." *Mesolella v. Providence*, 508 A. 2d 661, 669 (R.I. 1986). "The particular elements of the tort include (1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act or interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." *Id.* A plaintiff need not prove the existence of a contract when the interference claimed is with a prospective relationship. *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 51 F. Supp. 81, 102 (D. R.I. 1999).

4. Bad faith

"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement … Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended … Conversely, bad faith means more than mere negligence; it involves a dishonest purpose." *Normandin v. Gauthier*, 2005 WL 1274350, *6 (R.I. Super.), citing *Barber v. Jacobs*, 752 A. 2d 430, 435 (Conn. App. 2000) (citations omitted); *see also*, *Lajayi v. Fafiyebi*, 860 A. 2d 680, 687 (R.I. 2004), citing *Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A. 2d 1113, 1115 (R.I. 2002) ("Virtually every contract contains an implied covenant of good faith and fair dealing between the parties.")

5. Breach of fiduciary duty

In general, the elements of a fiduciary duty claim consist of: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Chain Store Maintenance, Inc. v. National Glass & Gate Service, Inc.*, 2004 WL 877599, *13 (R.I. Super.), citing *Griffin v. Fowler*, 260 Ga. App. 443, 445 (Ga. App. 2003); *Lyons v. Midwest Glazing*, 265 F. Supp. 2d 1061, 1076 (N.D. Iowa 2003). *See also*, 37 Am. Jur. 2d *Fraud & Deceit* Section 31 (articulating the elements of a breach of fiduciary duty claim as "(1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary.")

"A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) *Torts* Section 874. Moreover, "[a] 'fiduciary relation' arises whenever confidence is reposed on one side, and domination and influence result on the other" or "when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other." *Chain Store Maintenance, Inc.*, 2004 WL 877599, *13, citing *Lyons*, 265 F. Supp. 2d at 98. Factors that demonstrate the existence of a fiduciary relationship include "the acting of one person for another; the having and exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another." *Id.*

Where a fiduciary relationship exists, the person in whom the confidence is reposed possesses a duty to "exercising the utmost good faith in the transaction with due regard to the interests of the one reposing confidence, to make full and truthful disclosures of all material facts,

and to refrain from abusing such confidence by obtaining any advantage to himself or herself at the expense of the confiding party." 37 Am. Jur. 2d *Fraud & Deceit* Section 31.

6. Unfair and deceptive acts or practices (M.G.L.A. 93A, Sec. 2)

The criteria that must be established in order to successfully demonstrate a violation of M.G.L.A. 93A Section 2 are as follows: "(1) whether the practice ... offends public policy as it has been established by statutes, the common law, or otherwise whether ... it is within at least the penumbra of some common law, statutory, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury." *Berenson v. National Financial Services, LLC*, 485 F. 3d 35, 40 (1st Cir. 2007).

"In determining whether an act or practice is unfair, as opposed to deceptive, ... must evaluate the equities between the parties. What a defendant knew or should have known may be relevant in determining fairness. Similarly, a plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether an act or practice is unfair." *Incase v. Timex Corporation*, 488 F. 3d 46, 57 (1st Cir. 2007).

Respectfully submitted,

Anthony F. Rosciti, Jr. & Shannon B. Rosciti

/s/Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel.: (401) 455-1000
Fax: (401) 455-7778
E-mail: cmulhearn@frlawric.om

Dated: August 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the within was served via e-mail on the following on this 21st day of August, 2007:

**Kevin C. Cain, Esq. –** kcain@peabodyarnold.com

**John P. Conley, Esq.** – jconnelly@peabodyarnold.com.

**Paul J. Moretti, Sr.** – pmoretti@tllaw.com; rarsac@tllaw.com

**Joseph DeAngelis, Esq.** – jdeangelis@tllaw.com.

**Ronald E. Ritland, Esq.** –rritland@peabodyarnold.com;

/s/Christopher M. Mulhearn