UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP<br>Plaintiff<br><br>v.<br><br>ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION<br>Defendant | CIVIL ACTION NO. 1:06-cv-00276-T-LDA |

**MOTION TO COMPEL DEFENDANTS ANTHONY F. ROSCITI, JR., AND SHANNON B. ROSCITI, TO PROVIDE MORE COMPLETE ANSWERS TO INTERROGATORIES AND MOTION TO DETERMINE SUFFICIENCY OF THEIR RESPONSES TO REQUESTS FOR ADMISSION**

**INTRODUCTION**

In accordance with Fed. R. Civ. P. 26, 33, 36 and 37, plaintiff, Hanover Insurance Company ("Hanover"), hereby moves this Court for an order compelling defendants, Anthony F. Rosciti, Jr., and Shannon B. Rosciti ("Roscitis") to determine the sufficiency of their responses to certain Requests for Admission, provide more complete to the related Answers to Interrogatories, and for an order awarding Hanover its attorneys' fees and costs for bringing in this Motion.

On December 11, 2007, Hanover sought to narrow the disputed issues by serving the Roscitis with a number of Requests for Admissions. At the same time, Hanover filed Interrogatories requesting, generally, that the Roscitis explain in detail any denial of any Request for Admission. A true and accurate copy of the Requests for Admissions and Interrogatories, with certificate of service, is attached to this Motion as Exhibit 1. The Roscitis responded by filing their responses to Hanover's Request for Admissions and Answers to Interrogatories on

January 10, 2008. A true and accurate copy of the responses filed by the Roscitis is attached to this Motion as Exhibit 2.

By letter dated January 23, 2008, Hanover, through counsel, notified counsel for the Roscitis that the responses to the Request for Admissions and Interrogatories were incomplete, evasive, non-responsive and/or objected to the Request for Admissions without valid bases. This letter was sent in order to comply with Fed. R. Civ. P. 37(a)(1) and 37(a)(5). A true and accurate copy of Hanover's letter dated January 23, 2008 is attached to this Motion as Exhibit 3. In response, on February 5, 2008, the Roscitis filed supplemental responses to Hanover's Requests for Admissions and Interrogatories. A true and accurate copy of the Roscitis' supplemental responses is attached to this Motion as Exhibit 4.

After Hanover set forth in detail its specific objections to their responses to Request for Admissions and Answers to Interrogatories, the Roscitis did file supplementary responses whereby they changed their objections to Request for Admissions 2, 3, 6 and 11 to admissions. However, with regard to Request for Admissions and accompanying Interrogatories 4, 5, 8, 9, 10, 12, and 13 and Answer to Interrogatory14, the Roscitis refused to admit or deny the Request for Admissions or completely answer the Interrogatories following any denials, but rather added additional reasons why they either objected to the Request for Admission, or felt they could not admit or deny the Request for Admission. By email dated February 8, 2008, counsel for Hanover advised counsel for the Roscitis of Hanover's continuing objections to the responses filed by the Roscitis to the Request for Admissions and Interrogatories. A true and accurate copy of the February 8, 2008 email and the response from the Roscitis' counsel are attached to this Motion collectively as Exhibit 5.

Hanover brings this Motion to determine the sufficiency of the Roscitis' responses to Request for Admissions 4, 5, 8, 9, 10, 12, and 13, and accompanying Interrogatories, and answer

to Interrogatory 14. In addition, Hanover seeks an award of its attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5), necessitated by bringing this Motion.

## FACTS

Hanover, as surety, wrote payment and performance bonds on behalf of South Shore Utility Corporation, Inc. ("South Shore") on two projects in Rhode Island, commonly known as Freight Rail Improvements, for the owner/obligee, Amtrak ("Amtrak Project") and the Pawtucket Water Treatment Project for general contractor/obligee, EarthTech, Inc. ("Pawtucket Project"). Bonds on the Pawtucket Project were executed in May of 2005 and on the Amtrak Project in June of 2005.

As partial consideration to Hanover agreeing to write bonds on behalf of South Shore, the individual Indemnitors, including the Roscitis, executed an Agreement of Indemnity in Hanover's favor in May of 2005. A true and accurate copy of the Indemnity Agreement is attached to Hanover's complaint as Exhibit A. Among other things, the Indemnity Agreement obligates the Indemnitors to indemnify and hold harmless Hanover from and against any and all loss, costs, attorneys' fees, etc., associated with its execution of bonds on behalf of South Shore. This indemnity obligation included an obligation to post collateral to be held by Hanover as soon as claims were asserted under the bonds and in amounts satisfactory to Hanover. In addition, the Indemnity Agreement provides an assignment of all contract funds on bonded projects, and otherwise, to Hanover upon default of any or all Indemnitors of any of the obligations in the Indemnity Agreement.

Hanover was sued in Rhode Island State Court on a payment bond claim in November of 2005 by a subcontractor of South Shore, G. Donaldson, in the amount of $536,000 plus interest and attorneys' fees. In addition, a supplier of South Shore on the Pawtucket Project, Vellano

Brothers, Inc., filed a notice of claim in the amount of $755,000 with Hanover on or about March 3, 2006.

Pursuant to the terms of the Indemnity Agreement, Hanover demanded, by letter dated March 17, 2006, collateral from the Indemnitors in the amount $1.3 million. A true and accurate copy of this March 17, 2006 letter is attached to the complaint of Hanover in the above matter as Exhibit B. The Indemnitors failed to post collateral on behalf of Hanover as demanded.

By letter of March 21, 2006, pursuant to its rights under Indemnity Agreement, Hanover sent letters to Amtrak and EarthTech requesting that each not release contract funds to South Shore without Hanover's prior written consent. Further, by letters dated April 13, 2006, South Shore wrote to Amtrak and EarthTech acknowledging its default under the associated contracts due to financial difficulties, voluntarily terminated its contact rights with each and directed each to pay all remaining contract funds to Hanover or at its direction. In addition, by letters dated April 13, 2006, the Indemnitors, including the Roscitis, wrote Hanover to acknowledge their default under the Indemnity Agreement. A true and accurate copy of this April 13, 2006 letter is attached to Hanover's complaint as Exhibit C.

Hanover then arranged with Amtrak and EarthTech to have replacement contractors complete the bonded work and negotiated settlements with each on their performance bond claims. In addition, Hanover settled valid claims of material suppliers and subcontractors of South Shore on both projects, including paying G. Donaldson a total of $520,000 to settle its claim on the Pawtucket Project and $681,000 to Vellano Brothers to settle its claim on the Pawtucket Project. Hanover has losses to date under the bonds written on the Pawtucket Project totaling approximately $1.8 million.

Hanover filed suit to enforce its rights under the Indemnity Agreement in June of 2006 in this Court ("Indemnity Action"). The Roscitis filed suit against Hanover on various grounds in

Rhode Island State Court, which action was removed and consolidated with Hanover's Indemnity Action.

**ARGUMENT**

Fed. R. Civ. P. 36 provides:

> "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of matters within the scope of Rule 26(b)(1) relating to:
>
> > (A) facts, the application of law to fact, or opinion about either; and
> >
> > (B) the genuineness of any described documents."

Under Rule 36(a)(4):

> " … The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

Under Rule 36(a)(6):

> "The requesting party may move to determine the sufficiency of an answer or objection. … On finding that an answer does not comply with this rule, a court may order either that the matter is admitted or that an amended answer be served…"

Under Fed. R. Civ. P. 37(a), a party may make a motion to compel discovery and, under Rule 37(a)(4), evasive or incomplete responses will be treated as a failure to respond. If a motion to compel is granted, the moving party is entitled to its reasonable expenses in making the motion, pursuant to the requirements of Rule 37(a)(5).

The courts have liberally construed Requests for Admission under Fed. R. Civ. P. 36. Kershner v. Beloit Corp., 106 F.R.D. 498, 499 (D. Me. 1985); Duncan v. Santaniello, 1996 U.S. Dist. LEXIS 3860 (D. Mass. 1996).

"Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact (citations omitted) . . . . Such breadth allows litigants to winnow down issues prior to trial and focus their energy and resources on disputed matters." Carney v. IRS, 258 F.3d 415, 419 (5th Cir. 2001).

The courts have also consistently found that Requests for Admission under Fed. R. Civ. P. 36 serve as a valuable tool to judicial economy, saving time and expense, as they narrow issues and eliminate completely issues not in dispute. Barbosa v. Cincinnati Milicron, 1984 U.S. Dist. LEXIS 16923 (D. Mass. 1984) (The function of the procedures codified in Rule 36 F. R. Civ. P., is to ". . . define and limit the matters in controversy between the parties," citing Wright and Miller, Federal Practice and Procedure: Civil §2252)

As such, "parties may not view Requests for Admissions as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." Marchand v. Mercy Med. Ctr., 22 F.3d 933, 936-37(9th Cir. 1994).

As indicated above, the Roscitis object and/or decline to admit or deny Requests 4, 5, 8, 9, 10, 12 and 13 of the Requests for Admission served by Hanover. These objections can be summarized as follows:

1. In their individual capacities, the Roscitis were not parties to the transactions described. Rosciti Responses to Requests 4, 5, 8, and 9.

The Roscitis' attempt to distance themselves from the affairs of South Shore is contradicted by the following:

(a) Anthony Rosciti, Jr., at all relevant times, was the owner and operator of South Shore, serving as its President and, as such, has direct or imputed knowledge of South Shore's affairs.

(b) The Roscitis were Indemnitors of Hanover for losses under the bonds written on behalf of South Shore. Under Paragraph 14 of the Indemnity Agreement, the Indemnitors agreed to keep themselves apprised of the affairs of South Shore.

(c) The Roscitis, without objection, responded to Hanover's Request for Production of Documents and First Set of Interrogatories by providing documents requested by Hanover from South Shore's records and answered questions directly relating to South Shore's actions. Accordingly, any claims that the Roscitis were, as individuals, neither responsible for any knowledge nor responsible for answering any questions with regard to South Shore's actions, have effectively been waived.

(d) The Roscitis allege in their counter claim to this suit and in their complaint under C.A. 06-392 that Hanover took certain actions in responding to bond claims against South Shore that damaged the Roscitis individually and obviated their obligations under the Indemnity Agreement. Hanover contends that the Roscitis cannot make these claims directly as guarantors of South Shore, on the one hand, to avoid their obligations while, on the other hand, assert no knowledge or responsibility to respond to questions concerning the specific transactions involving South Shore.

More importantly, Fed. R. Civ. P. 36(a)(4) prohibits a party from asserting lack of knowledge or information unless the party details that it made a reasonable inquiry. The documents or transactions referred to in Requests for Admission 4, 5, 8, and 9 are documents or materials relating to transactions disclosed by Hanover to the Roscitis in response to document production requests and/or involve documents or transactions produced by the Roscitis (which they obtained from South Shore's records) in response to Hanover's request for production of documents. Alternatively, the documents or materials related to the transactions described in these Requests are easily obtainable by the Roscitis from the South Shore Receiver.

In responding to these Requests, the Roscitis have made no showing that they made a reasonably inquiry. As the court in Barbosa, supra, at 6, stated: “If a party cannot truthfully admit or deny the matter, he is required to set forth the reasons in detail why this is so and ‘[a] general statement that he can neither admit or deny, unaccompanied by reasons, will be held an insufficient response, and the court may either take the matter as admitted or order a further answer,’ Wright and Miller, Federal Practice and Procedure: Civil §2261.”

As another court found: “Such reasonable inquiry includes an investigation and inquiry of employees, agents and others who conceivable, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response (citation submitted) . . . The inquiry may require venturing beyond the parties to the litigation and include under certain limited circumstances non-parties, but not strangers.” Concerned Citizens of Belle Haven v. The Belle Haven Club, 223 F.R.D. 39, 44 (D. Conn. 2004). Further, the district court in Maine declared: “If the accuracy of the documents subject to a Rule 36 request can be determined ‘from reliable sources without undue hardship’ the respondent is obligated to respond.” Bouchard v. U.S., 241 F.R.D. 72 (D. Me. 2007).

Further, in the case of Uniden America Corp. v. Ericsson, Inc., 181 F.R.D. 302, 304 (M. D. N.C. 1998), the court found that “a party must make inquiry of a third party when there is some identity of interest manifested such as by both being parties to the litigation, a present or prior relationship of mutual concerns, . . . or when there is no manifest or potential conflict between the party and the third-party.”

In this case, in response to Request for Admissions 4, 5, 8, and 9, the Roscitis maintain that they cannot admit nor deny the requests relating to certain transactions involving South Shore since the Roscitis appear in this litigation only in their individual capacities. The Roscitis do not assert that they made any inquiry, by reviewing documents that they obtained from

Hanover pursuant to production requests or voluntarily from the South Shore Receiver, much less making any inquiry with South Shore's Receiver concerning any further review of its records and documents. Obviously, South Shore and the Roscitis have a community of interest in this matter as Anthony Rosciti, Jr., served as the owner and operator of South Shore and both Roscitis acted as Indemnitors pledging their personal assets to Hanover for any losses occasioned by Hanover writing bonds on behalf of South Shore.

In such a situation, this court has the discretion to order these Requests be admitted, or that further response be made by the Roscitis to either admit or deny the Requests.

2. In response to Requests for Admissions 4 and 8, the Roscitis claim they have no "independent recollection or knowledge" relating to the subject matter of these requests.

As the above analysis makes abundantly clear, a party's response that it cannot admit or deny a Request for Admission because of a lack of recollection or knowledge is insufficient without a specific showing of a reasonable inquiry to obtain the knowledge or information. As the Massachusetts District Court stated in the case of A. & V. Fishing, Inc. v. The Home Ins. Co., 145 F.R.D. 285 (D. Mass. 1993), "Rule 36(a), Fed. R. Civ. P. requires a 'reasonable inquiry.' " Further, "a response which fails to admit or deny a proper Request for Admission does not comply with the requirements of Rule 36(a) if the answering party has not, in fact, made reasonable inquiry, or if the information readily obtainable is sufficient to enable him to admit or deny the matter." Asea, Inc., 669 F.2d 1242, 1247 (9th Cir. 1981). Absent a clear showing of reasonable inquiry, the court made it clear that the court has the discretion to order the request admitted or that the response be amended.

As indicated, the Requests in question here could be easily admitted or denied by reviewing the documents produced by Hanover or obtained previously by the Roscitis from the South Shore Receiver in response to Hanover's production request of the Roscitis. Even if resort

to other documents was still necessary, as seen from the case law cited above, the Roscitis had a duty to inquiry further of South Shore's Receiver to obtain the information necessary to enable them to admit or deny these requests. In responding or supplementing their responses to the Requests for Admission, the Roscitis have not made any showing that they made any inquiry, reasonable or otherwise, to obtain the knowledge or information necessary to admit or deny the Request for Admissions in question. Accordingly, this Court has the discretion to order these requests admitted, or alternatively, that the Roscitis must serve amended responses admitting or denying the Requests in question.

3. In providing their supplemental response to Request for Admission No. 8, the Roscitis stated that they could not admit or deny the Request for Admission because the materials detailing the Vellano Brothers' claim was "not appended" to the Request, such that the Roscitis could not be certain whether the claim amount was as stated in the Request for Admission.

Again, all materials in Hanover's possession relating to the Vellano Brothers' claim were produced to the Roscitis in response to their document production request. These documents certainly provided the Roscitis ample information to verify, as they state, "as to whether the claimed amount was, in fact, $755,725.01." In response, the Roscitis have made no showing, as required by the rule and case law, of making a reasonable inquiry into this matter. In fact, it is clear from their response that they did not review the materials that Hanover provided them. Absent that, this Court has the discretion to order this Request for Admission 8 admitted, or, alternatively, that the Roscitis must serve an amended response admitting or denying the Request.

4. The Roscitis, after previously objecting to the Request on other grounds, filed a supplemental response to Request for Admission 5 that they could not admit or deny the Request on the ground that the Pay Request 12 (a typographical error, this should have read Pay Request

"2") referred to in the Request was not appended to the Requests. As the previous two Requests for Admission had referred to Pay Request 2, it was clear in this context that Request for Admission 5 referred to Pay Request 2 (which was attached) and not Pay Request 12. Even if this was unclear to Roscitis at the time, they refused to provide an amended response after the typographical error was pointed out in an email to their counsel (Exhibit 5, email dated February 8, 2008. Roscitis should not be allowed to remain aloof of all information around them in responding to Hanover's Requests, or to refuse to admit or deny a Request for Admission on these grounds.

5. In their responses and supplemental responses to Request for Admissions Nos. 10, 12 and 13, the Roscitis object and indicate they can neither admit nor deny the Requests for the following, related reasons:

(a) The Indemnity Agreement "speaks for itself";

(b) The Requests calls for a legal conclusion; and

(c) The terms used in the Request constitute "legal terms of art."

All three of these Requests ask for simple admissions relating to the Roscitis' understanding and interpretation of the terms of the Indemnity Agreement, the agreement that is central to Hanover's claims against the Roscitis. Request No. 10 asks for an admission that the Roscitis had a duty to post collateral on behalf of Hanover under the Indemnity Agreement. Request No. 12 asks the Roscitis for an admission that the Indemnity Agreement provides Hanover with an assignment of all bonded contract funds upon the default of any or all of the Indemnitors under the Indemnity Agreement. Request No. 13 asks the Roscitis to admit that their previously admitted failure to post collateral or otherwise indemnify Hanover was a default under the Indemnity Agreement.

Fed. R. Civ. P. 36(a) specifically permits a Request for Admission relating to an "facts, the application of law to fact, or opinion about either." Further, as the court in Booth Oil v. Safety-Kleen, Corp., 194 F.R.D. 76, 80 (W.D. N.Y. 2000), held, in response to an objection that the Requests for Admission impermissibly requested a contract interpretation, the request "may not be ignored on the ground that the request seeks an interpretation of text or that the document in question 'speaks for itself.' Documents do not speak, rather, they represent factual information from which legal consequences may follow."

Specifically, this court found:

> "A statement of a party's understanding of the meaning or intent of a document is therefore a statement of fact, and where the question of the meaning of the document is at issue in the case, a request directed to another party seeking an admission or denial of a document's meaning or intent by that party as stated in the request relates to a statement of fact, and is authorized by Rule 36." Id.

Such requests are not objectionable because the issue might be ultimately for judicial determination since: "Rule 36 would cover an admission by [a party] as to what its obligations were as a matter of law, because the text of the rule specifically authorizes request for admission of propositions of law as applied to fact." Langer v. Monarch Life Ins. Co., 966 F.2d 786, 803 (3rd Cir. 1992).

In this case, Requests 10, 12 and 13 relate to the Roscitis' interpretation of the Indemnity Agreement. Hanover's entire suit is predicated on the enforcement of the Agreement against the Roscitis as Indemnitors of South Shore. As stated by the Langer and Booth Oil courts, requests related to a party's interpretation of a contract provision are not objectionable as asking for a conclusion of law, but to the contrary relate to a statement of fact. Hanover's request concerning the duty of the Roscitis under the Indemnity Agreement, and the requests relating to default under the Indemnity Agreement are no more than requests for an application of law to fact, which is permitted under Rule 36.

Accordingly, the objection posed by Roscitis that the Indemnity Agreement speaks for itself is invalid. For the same reasons, the objections related to a request seeking a legal conclusion or using legal terms are likewise invalid.[1]

5. Finally, the Roscitis deny the Request for Admission 14. In the following Interrogatory No. 14, Hanover requests that the Roscitis detail their denial of the statement that Hanover did not engage in fraud or collusion with EarthTech or Amtrak in resolving the bond claims. This is an important issue in Hanover's Indemnity Action as, under Rhode Island law, Indemnitors can defend a surety's claim for indemnity under an Indemnity Agreement only by proving fraud or collusion by the surety in conjunction with the obligees in resolving the bond claims.

Rather than provide a basis to support the claim that Hanover did engage in active fraud or collusion with these obligees, the Roscitis merely state that Hanover "negotiated" with the obligees and "directed" the obligees to pay no further contract funds on the projects to South Shore without Hanover's prior written consent. Obviously, the negotiation with the obligees is natural and encouraged as Hanover undertook to resolve the bond claims in good faith. Additionally, the Indemnity Agreement specifically grants Hanover the right to ask the obligees to cease forwarding contract fund payments to South Shore. Accordingly, the Roscitis answer to Interrogatory No. 14 is not responsive and Hanover respectfully requests that the Roscitis be required to supplement their response.

## CONCLUSION

[1] It should be noted here that the Roscitis understand the concept of "defaulting" under the Indemnity Agreement. By their letter dated April 13, 2006, the Roscitis, among others, admitted to Hanover their "default" under the Indemnity Agreement. In doing so, they cannot now object to Request for Admissions 12 and 13 on the basis that they did not know what a "default" of the Indemnity Agreement means. Further, the Indemnity Agreement lists events constituting default of the Indemnity Agreement in Paragraph 6.

For the foregoing reasons, Hanover respectfully requests that this Court order that Request for Admissions 4, 5, 8, 9, 10, 12 and 13 be deemed admitted by the Roscitis or, alternatively, that the Roscitis be required to immediately amend their responses by admitting or denying the Request for Admissions. Hanover further requests that the Court order the Roscitis to more completely respond to Interrogatory No. 14.

Finally, Hanover respectfully requests its attorneys' fees and costs for bringing this Motion, pursuant to Fed. R. Civ. P. 37(a)(5), and such other relief as this Court deems appropriate and just.

Respectfully submitted,

THE HANOVER INSURANCE GROUP

By its attorneys,

/s/ Ronald E. Ritland
Ronald E. Ritland, *pro hac vice*
Kevin C. Cain, #3960
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
[617] 951.2100

Dated: February 25, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the within was served via electronic mail on the following on this 25th day of February, 2008:

Paul J. Moretti, Sr. – pmoretti@tllaw.com
Christopher M. Mulhearn – cmulhearn@frlawri.com

/s/ Ronald E. Ritland
Ronald E. Ritland

677688_1
2114-92646