**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE HANOVER INSURANCE GROUP,** | : | |
| **Plaintiff** | : | |
| **vs.** | : | **C.A. No.: 06-276/T** |
| **ANTHONY F. ROSCITI, JR.; SHANNON B. ROSCITI; HENRY V. ROSCITI; and A.H.R. UTILITY CORPORATION,** | : | |
| **Defendants** | : | |

**ANTHONY F. ROSCITI, JR. & SHANNON B. ROSCITI'S OBJECTION TO PLAINTIFF'S MOTION TO COMPEL MORE COMPLETE ANSWER PLAINTIFF'S INTERROGATORIES AND TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSIONS**

NOW COME Defendants, Anthony F. Rosciti, Jr. and Shannon B. Rosciti (collectively, the "Roscitis"), and each of them, by and through counsel, and hereby object to Plaintiff, The Hanover Insurance Group's ("Hanover") motion to compel the Roscitis to provide more complete answers to interrogatories and motion to determine sufficiency of their responses to requests for admissions in connection with the above-identified action.

**Introduction**

Despite the parties' good faith and best efforts to endeavor to resolve the instant discovery dispute, the same has not been resolved to the satisfaction of Hanover to date. In a good faith attempt to achieve a resolution, and in response to Hanover's counsel's January 23, 2008 correspondence, the Roscitis supplemented their responses to Hanover's requests for admissions and answers to its second set of interrogatories. *See Exhibit 4 appended to Hanover's motion to compel more complete answers to interrogatories and motion to determine*

*sufficiency of their responses to requests for admissions*. Indeed, the Roscitis did modify, and supplement, their initial responses to Hanover's Requests for Admissions Nos. 2, 3, 6 and 11, respectively, which said discovery responses are not the subject of Hanover's instant motion.

Notwithstanding, however, Hanover, still takes issue with the Roscitis' responses to Hanover's Requests for Admission Nos. 4, 5, 8, 9[1], 10, 12, and 13, and accompanying Interrogatory No. 14, respectively. *See Hanover's motion to compel more complete answers to interrogatories and motion to determine sufficiency of their responses to requests for admissions*. In support of their position, the Roscitis respectfully submit to the Court that they have used good faith and reasonable efforts to respond to Hanover's requests for admissions and second set of interrogatories. Moreover, the Roscitis believe that under the attendant facts and circumstances their position relative to the subject discovery is appropriate. At no time have the Roscitis taken the position that the discovery sought by Hanover should not be provided. However, given the vehicle to which Hanover choose to avail itself *vis-à-vis requests for admissions and interrogatories*, the same are neither susceptible not conducive to the Roscitis responding in a manner or fashion that is satisfactory to Hanover. The Roscitis suggest that depositions of the Roscitis are the more appropriate discovery mechanism. In fact, taking the Roscitis' suggestion, Hanover has scheduled their respective deposition for April 7th.

Accordingly, the Roscitis respectfully request that this Court deny Hanover's motion to compel more complete answers to interrogatories and motion to determine sufficiency of their responses to requests for admissions, as well as its accompanying request for an award of attorneys' fees, pursuant to Rule 37 of the Federal Rules of Civil Procedure.

---

[1] This Court should take note that although the Roscitis' response to Hanover's Request for Admission No. 9, and accompanying interrogatory, is implicated by the subject motion, Hanover requests no relief as against the Roscitis with respect to the same. As such, the Court should determine the Roscitis' discovery response to this request, and interrogatory to be sufficient.

**Pertinent Facts**

In or about 2005, Hanover furnished performance and payment bonds on behalf of its principal, South Shore Utility Contractors, Inc. ("South Shore"), naming Earth Tech and O. Ahlborg and Sons, Inc. (collectively, "Earth Tech"), respectively, as obligees for that certain project known as the Pawtucket Water Treatment Facility (the "Pawtucket Project") in the total amount of Five Million Six Hundred Sixteen Thousand Thirty Dollars and 00/100 ($5,616,030.00) (the "Pawtucket Project Bonds"). In addition, at or about that same time, Hanover furnished a payment and performance bonds or on behalf of its principal, South Shore, naming the Amtrak-National Railroad Passenger Corporation ("Amtrak") as obligee for a project known as the Freight Rail Improvement Project, twenty-four (24) inch water main relocation in Providence, Rhode Island (the "Amtrak Project") in the amount of Three Hundred Sixty-Five Thousand Nine Hundred Dollars and 00/100 ($365,900.00) (the "Amtrak Project Bonds").

In or about May, 2005, South Shore, the Roscitis, Henry Rosciti ("H. Rosciti") and A.H.R. Utility Corporation ("AHR"), and each of them, executed an Agreement of Indemnity (the "Indemnity Agreement") in favor of Hanover relative to the Pawtucket Project Bonds and the Amtrak Project Bonds, respectively.

Subsequent to the commencement of the Pawtucket Project and Amtrak Project, respectively, and during South Shore's discharge of its scope of work in connection with these projects, South Shore had disputes with two (2) of its subcontractors regarding payment. One of the disputes involving the Pawtucket Project related to measurement and payment terms in a subcontract. That dispute involved G. Donaldson, with whom South Shore ultimately reached an agreement as to payment terms relative to the subject dispute.

The other dispute also involved the Pawtucket Project, wherein a subcontractor, Vellano Bros., was applying payments on the Pawtucket Project and other "bonded" work to only outstanding requisitions on "non-bonded" projects, thus creating an inflated receivable. South Shore's records supported its position with regard to Vellano Bros. Hanover had knowledge that South Shore had settled the dispute with G. Donaldson, and that South Shore's records supported South Shore's position relating to the Vellano Bros. dispute.

Despite the settlement of the G. Donaldson dispute, and the good faith position advanced by South Shore relative to the Vellano Bros. dispute, Hanover wrongfully, tortiously and in bad faith took it upon itself to communicate directly with the owners on both the Pawtucket Project and the Amtrak Project, respectively, and, further, notified and directed those owners not to make any further payments to the South Shore, which said action was without the prior knowledge or authorization of South Shore. With all income from the Pawtucket and Amtrak Disputes cut-off, South Shore no longer had the ability to conduct an otherwise successful business.

South Shore's principal was able to secure a take-over arrangement that ensured the completion of the Pawtucket and Amtrak Projects despite Hanover's action; however, South Shore had no ability to continue in its business, and was ultimately petitioned into a Rhode Island Superior Court receivership proceeding as a result of Hanover's direction to the owners of the Pawtucket Project and Amtrak Project, respectively, not to remit any further funds to South Shore, thereby resulting in South Shore's "flow of funds" relative to these projects being "cut off".

**Argument**

Rule 36 of the Federal Rules of Civil Procedure provides that any party may serve upon any other party request to admit "the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to the statements or opinions of fact or of the application of law to fact. . . " Notwithstanding, however, it is not appropriate for a party to propound a request for admission of a pure question of law. *See* 8A Wright & Miller, *Federal Practice and Procedure: Civil* 2d § 2255 (1994) (noting that Rule 36, as amended, "does not allow a request for admission of a pure matter of law.")

Further, the exclusion of questions of pure law from the scope of Rule 36 requests for admissions was examined in *English v. Cowell,* 117 F.R.D. 132 (C.D. Ill. 1986), wherein it was held that such requests are improper insofar as they call "for a legal conclusion and therefore is beyond the scope of a request for admissions." *English*, 117 F.R.D. at 135. Other courts have also found requests for admissions intended to solely illicit legal conclusions to be improper. *See In re Olympia Holding Corp. v. Belt Concepts of Am.*, 189 B.R. 846, 852-853 (Bankr. M.D. Fla. 1995) (holding that requests for admissions served by a plaintiff bankruptcy trustee that sought to force a defendant to admit or deny that it was a "small business" subject to the small business exception from freight undercharge liability contained in the Federal Negotiated Rates Act were improper and the defendant could not be compelled to admit nor deny them); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Company, Inc.*, 130 F.R.D. 92, 96 (N.D. Ind. 1990) (holding that plaintiff was not required to substantively respond to requests for admission that sought to have plaintiff admit or deny the validity of patent claims, which represented a legal conclusion).

It is beyond dispute that Hanover's Request for Admission No. 10 seeks the Roscitis to admit or deny purely a legal conclusion. Simply put, Hanover requests that the Roscitis admit or deny whether they had a “duty” to post the collateral requested by Hanover in its so-called March 15, 2006 demand letter. Hanover’s exception to Roscitis’ response to its Request for Admission No. 10 is disingenuous insofar as although the Roscitis response neither admits nor denies whether they had a “duty” to post the requested collateral, given the discovery request seeks an admission relative to a legal conclusion, the Roscitis do, however, admit in response to this Request for Admission No. 10 that they did not post any collateral pursuant to Hanover’s March 15, 2006 “demand.” Thus, the issue of whether the Roscitis’ failure to do so constitutes a breach of any purported “duty” is a determination for the Court. Notwithstanding, the Roscitis concede that no collateral was posted.

Among other things, it is squarely before the Court whether the Roscitis owed any “duty” to Hanover *vis-à-vis* the Indemnity Agreement. After considering the attendant facts and circumstances it is for the Court to decide whether the Roscitis’ failure to post collateral constituted a breach of any duty owed Hanover. The Roscitis can neither admit nor deny this pure question of law. Throughout the course of the instant matter, the Roscitis have steadfastly maintained that it is their position that to the extent that any such “duty” may have initially existed under the Indemnity Agreement, any such obligation was relieved as of result of Hanover’s own wrongful conduct, and, more particularly, its interference with South Shore’s direct contractual relationships with the owners of the Pawtucket Project and Amtrak Project, respectively.

Similarly, Hanover’s Request for Admission No. 12 seeks to have the Roscitis admit or deny whether Hanover is entitled to an “assignment” of bonded contract fund in the event they

"defaulted" under the Indemnity Agreement. Again, on the face of this discovery request it is clear that Hanover is seeking to have the Roscitis to admit or deny a pure legal conclusion, and thus, such a request is improper and the Roscitis may abstain from admitting nor denying the same. Further, as indicated above, to the extent that there may have been any "default" under the Indemnity Agreement, the Roscitis argue that any obligations under the Indemnity Agreement would appear to have been vitiated as a result by Hanover's wrongful conduct. Thus, the Roscitis believe that they have appropriately responded to this discovery request.

Lastly, with respect to Hanover's Request for Admission No. 13, the same calls for the Roscitis to admit or deny a pure legal conclusion, whether their actions or inaction consisted a "default" under the Indemnity Agreement. Hanover's discovery does not define "duty" or "default". As such, the Roscitis are unable to ascribe any meaning to these terms insofar as Hanover appears to be using the same as legal conclusions. Even more, the Roscitis are without the ability to discern the precise meaning that Hanover is ascribing to these legal conclusions, which necessarily impacts their rights, claims and/or remedies in this case. For this reason, as well as those articulated relative to their responses to Hanover's Requests for Admissions Nos. 10 and 12, respectively, above, the Roscitis believe their response to Hanover's Request for Admission No. 13 to be sufficient.

Accordingly, the Roscitis respectfully submit that their responses to Hanover's Requests for Admissions Nos. 10, 12 and 13, respectively, should be deemed sufficient, and Hanover's motion with respect to their responses to these discovery requests be denied.

With respect to Hanover's Request for Admission No. 4, the Roscitis readily admit that the check appended to Hanover's discovery request as Exhibit B is dated August 10, 2005, and, further, is made payable from Earth Tech, Inc. to South Shore. Clearly, there is no dispute with

respect to those issues. However, the Roscitis are presently unable to admit or deny whether said check was in payment of Payment Request No. 2. The subject discovery request does not append the billing and payment history relative to the Pawtucket Project, which the Roscitis reasonably believe is in the custody, control and/or possession of Hanover, nor does it lay any additional foundation which would allow the Roscitis to draw a definitive conclusion with respect to the subject of the purported August 10, 2005 payment. Although there is handwriting on the bottom of Exhibit 3 appended to Hanover's Request for Admission No. 4, the same is not particularly instructive relative to the Roscitis ability to admit nor deny Hanover's Request for Admission No. 4. Further, a review of the documents presently available to the Roscitis in this matter is not especially informative on this point either. True, although Anthony F. Rosciti, Jr. is generally aware of the business affairs of South Shore, he is not, however, able to recollect with particularity, based upon the discovery adduced to date in this matter, whether Exhibit 3 is in payment of Payment Request No. 2. As such, he can neither admit nor deny the same.

Simply put, the Roscitis are not endeavoring to "hedge" their discovery responses, but instead, mindful that said discovery responses are being signed under oath, they are reluctant to simply "guess" unless they are presented with a full package of information recounting the billing and payment history relative to the Pawtucket Project, which again, the Roscitis reasonably believe Hanover is in possession of, but has not been provided to the Roscitis with the subject discovery requests. Thus, the Roscitis suggest that the instant dilemma is one of Hanover's own making. Further, the Court should take note that there is no suggestion that Sharon B. Rosciti had any involvement in South Shore's business affairs.

The Roscitis advance the same position has it relates to Hanover's Request for Admission No. 5. Moreover, Hanover's papers indicate that its Request for Admission No. 5 is a

typographical error. Although that may be the case, and despite the fact that Hanover has now "flagged" the same for the Roscitis, that does not change the fact that the Roscitis can neither admit nor deny this Request for Admission No. 5 that is presently before them insofar as the same is flawed and, as such, they cannot knowingly admit or deny to any wholly incorrect discovery request, which Hanover concedes. To the extent that Hanover demands an "admission" with respect to this discovery request, the Roscitis will further supplement their responses to deny the same. If Hanover submits a revised request for admission on this issue to the Roscitis, they will respond appropriately.

Assuming, *arguendo*, that Hanover resubmits a "corrected" Request for Admission No. 5, the very same arguments would apply as to Request for Admission No. 4. To the extent that Hanover wishes to recast its Request for Admission No. 5, as well as provide the Roscitis with the billing and payment history for the subject project, the Roscitis would then be in position to admit or deny any statement set forth therein.

With respect to Hanover's Request for Admission No. 8, subsequent to the Roscitis' initial responses to Hanover's requests for admissions, as well as their supplemental responses to Hanover's requests for admissions, the parties took the deposition of Mr. Paul DeLong of Earth Tech in this matter. Among the areas of inquiry made by counsel for Hanover of Mr. DeLong deposition involved the so-called Vellano Bros.' claim that is the subject of Hanover's Request for Admission No. 8. At that deposition counsel for Hanover produced the so-called March 3, 2006 Vellano Bros.' "claim letter", which refreshed Anthony Rosciti, Jr.'s recollection, who was present at Mr. DeLong's deposition, with respect to the Vellano Bros.' "claimed amount". As such, the Roscitis, after reviewing the March 3rd communication, do, in fact, admit that Vellano Bros. submitted a claim to South Shore and Hanover in the initial amount of $755,725.01 relative

to the Pawtucket Project. Accordingly, the Roscitis will further supplement their response to Hanover's Request for Admission No. 8, and admit the same.

The Roscitis suggest that Hanover's motion to compel more complete answers to interrogatories and motion to determine sufficiency of their responses to requests for admissions is in error as the same relates to Roscitis' response to Hanover's Request for Admission No. 9. Simply put, the Roscitis denied Hanover's discovery request, and, further, fully answered Hanover's accompanying Interrogatory No. 9. Even more, Hanover's instant motion seeks no relief against the Roscitis with respect to its response to Hanover's Request for Admission No. 9, or its accompanying interrogatory. As such, the Roscitis respectfully pray that this Court determine the response to Hanover's Request for Admission No. 9, and accompanying interrogatory as being sufficient.

Finally, Hanover complains that the Roscitis' answer to its Interrogatory No. 14 is "not responsive". Interestingly, however, Hanover determines the same to be so because it does not comport with its interpretation of what it believes is applicable case law relative to the Roscitis' Counterclaim and/or fails to characterize certain conduct in a way that would be in aid of Hanover to frame a dispositive motion. At no time does Hanover argue that the Roscitis did not answer the subject interrogatory, but only suggests that the Roscitis did not answer the discovery request in a manner that is agreeable to the position that Hanover wishes to take. Indeed, to the extent that the Roscitis' answer to Hanover's Interrogatory No. 14 falls short of what legal standard Hanover believes the Roscitis must demonstrate in order to successful prevail on their Counterclaim, it would seem that any such discovery response would actually would be in aid of their position and not inure to their detriment. That being said, the Roscitis reasonably believe

that they have fully responded to Interrogatory No. 14, and respectfully request that the Court determine said discovery response to be satisfactory.

**Conclusion**

WHEREFORE, for the foregoing reasons, the Roscitis respectfully pray that this Court deny Hanover's motion to compel the Roscitis to provide more complete answers to interrogatories and motion to determine sufficiency of their responses to requests for admissions, that this Court deny Hanover's request for award of attorneys' fees, pursuant to Rule 37 of the Federal Rules of Civil Procedure, and that this Court award to the Roscitis such other further relief as this Court may deem fair, just and reasonable.

Respectfully submitted,

Anthony F. Rosciti, Jr. &
Shannon B. Rosciti

By their Attorneys,

/s/ Christopher M. Mulhearn
Christopher M. Mulhearn (#5188)
**Ferrucci Russo, P.C.**
55 Pine Street, 4th Floor
Providence, RI 02903
Tel: (401) 455-1000
Fax: (401) 455-7778
cmulhearn@frlawri.com

Dated: March 13, 2008

**CERTIFICATION**

I hereby certify that on this 13th day of March, 2008, the foregoing was served upon **Ronald E. Ritland, Esq.,** via e-mail @ rritland@peabodyarnold.com; **Kevin C. Cain, Esq.**, via e-mail @ kcain@peabodyarnold.com; **Joseph DeAngelis, Esq.**, via e-mail @ jdeangelis@tllaw.com; **Paul J. Moretti, Esq.**, via e-mail @ pmoretti@tllaw.com; and **John P. Connelly, Esq.**, via e-mail @ jconnelly@peabodyarnold.com.

/s/ Christopher M. Mulhearn