**UNITED STATES DISTRICT COURT**

**DISTRICT OF RHODE ISLAND**

THE HANOVER INSURANCE GROUP,
Plaintiff,

v. C.A. NO. : 06-0276-T-LDA

ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION,
Defendants.

**OBJECTION OF DEFENDANTS HENRY ROSCITI JR. AND AHR UTILITY CORPORATION TO PLAINTIFF'S MOTION TO COMPEL MORE COMPLETE ANSWERS TO INTERROGATORIES AND MOTION TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSIONS**

NOW COME Defendant Henry Rosciti Jr. ("Rosciti") and AHR Utility Corp. ("AHR") (referred to herein collectively as "Defendants") in objection to the Motion to Compel More Complete Answers to Interrogatories and Motion to Determine Sufficiency of Responses to Requests for Admissions filed by Plaintiff Hanover Insurance Company ("Hanover").

## I. INTRODUCTION

On December 12, 2007, Defendants Rosciti and AHR received Requests for Admissions and Interrogatories from Plaintiff Hanover pursuant to Rules 33 and 36 of the Federal Rules of Civ. Proc. Defendants Rosciti and AHR responded to Hanover's requests on or about January 10, 2008. Subsequent to Hanover's objection to the initial responses of Rosciti and AHR, the Defendants supplemented their responses. Despite the best good faith efforts of Rosciti and AHR to respond to Hanover's requests with the information within their knowledge and possession, Hanover has continued to object to the responses of the Defendants.

Specifically, Hanover has objected to the Defendants' responses to Requests for Admissions

5,6, 7 and 8 and the accompanying answers to interrogatories. The Defendants admit that Requests for Admissions and Accompanying Interrogatories to 5 and 6 contained a factual error regarding the timing of a $100,000.00 payment to one of the sub-contractors and are endeavoring to submit a supplemental response to correct those errors; however, the Defendants dispute Hanover's continued objections as to the remaining Requests and Interrogatories.

In support of their position, the Defendants aver that they have responded to all of the Plaintiff's Requests and Interrogatories in good faith and to the best of their ability and with all of the information they have available to them. Moreover, the Defendants believe that under the attendant facts and circumstances their position relative to the subject discovery is appropriate. At no time have the Defendants refused to provide the discovery sought by Hanover, nor have they suggested that the discovery sought should not be provided; however, the Defendants aver that the discovery methods Hanover has chosen to avail itself vis-à-vis requests for admissions and interrogatories, the same are neither susceptible not conducive to the Defendants responding in a manner or fashion that is satisfactory to Hanover. The Defendants have offered to Hanover to continue with their scheduled depositions, previously scheduled for February 26, 2008 and February 27, 2008, and suggested to counsel from Hanover that the depositions of the Defendants would be the more appropriate discovery mechanism to elicit the information which they are seeking through the Requests for Admissions and Interrogatories. Defendants further informed Hanover that if it still remained unsatisfied after the depositions they still had the option to file this Motion to Compel. Instead, Hanover cancelled the depositions as scheduled in order to file this Motion to Compel, then subsequently rescheduled the deposition of Anthony Rosciti for April 7th and Henry Rosciti for April 8th.

## II. FACTS AND TRAVEL

On or about May 31, 2005, the Defendants signed an Agreement of Indemnity with The Hanover Insurance Company ("Hanover") in exchange for the issuance of performance and payment bonds on behalf of South Shore Utility Contractors, Inc. ("South Shore"). The performance and payment bonds named Earth Tech and O. Ahlborg and Son's, Inc. (collectively, "Earth Tech") as obligees for a certain project known as the Pawtucket Water Treatment Facility (the "Pawtucket Project") and was in the total amount of five million six hundred sixteen thousand and thirty dollars ($5,616,030) (the "Pawtucket Bonds"). Additionally, Hanover also provided a performance and payment bond on behalf of South Shore, naming Amtrak National Railroad Passenger Corporation ("Amtrak") as the obligee for a project known as the Freight Rail Improvement Project, a twenty-four (24) inch water main relocation in Providence, Rhode Island, (the "Amtrak Project") in the amount of three hundred sixty five thousand and nine hundred dollars ($365,900) (the "Amtrak Bonds"). The Agreement of Indemnity was signed by H. Rosciti individually and by Defendant Anthony F. Rosciti, Jr. ("A. Rosciti") as President of AHR.

Subsequent to the commencement of the Pawtucket Project and the Amtrak Project, during South Shore's performance of work in connection with those two projects, South Shore had a dispute with two (2) of its subcontractors regarding payments. One of the disputes involving the Pawtucket Project related to the measurement and payment terms in a subcontract ("Pawtucket Dispute"). South Shore ultimately resolved the Pawtucket Dispute. Hanover was aware that South Shore had settled the Pawtucket Dispute.

The second dispute involved a subcontractor on the Amtrak Project applying payments on the Amtrak Project and other "bonded" projects to outstanding requisitions on "non-bonded"

projects, which created inflated costs on the Amtrak Project ("Amtrak Dispute"). Hanover was aware of the Amtrak Dispute and South Shore provided Hanover with documentation supporting its position that the subcontractor was improperly applying payments.

Despite Hanover's knowledge of the two disputes and South Shore's actions to resolve them, Hanover wrongfully, tortiously and in bad faith took it upon itself to contact the owners on both the Pawtucket Project and the Amtrak Project and requested that these owners not make any further payments to South Shore. At Hanover's request, all payments to South Shore on the Pawtucket Project and the Amtrak Project ceased. Without income from the two projects, South Shore lost its ability to continue to conduct its business.

South Shore was able to arrange for both the Pawtucket Project and the Amtrak Project to be taken over and the projects were subsequently completed. Because Hanover caused South Shore to cease receiving any income from its only two projects, South Shore was no longer able to conduct its business, which necessitated it being petitioned into receivership by its owners. South Shore's financial condition was a direct and proximate result of Hanover's instructions to the owners of the Pawtucket Project and the Amtrak Project to cease payments to South Shore.

Subsequent to the cessation of payments from both projects, South Shore became unable to pay its debts as they became due. South Shore subsequently was forced into receivership by the actions of Hanover.

Hanover filed suit to enforce its rights under the Indemnity Agreement. Rosciti and AHR raised affirmative defenses to Hanover's suit based upon the actions of Hanover forcing South Shore into receivership, thereby changing the intent of the indemnitors in entering into the Indemnity Agreement.

Hanover has objected to the responses of Rosciti and AHR to Requests for Admission 5 and 6, together with the corresponding Interrogatories. Specifically, the two requests are regarding whether or not South Shore made any payments to G. Donaldson and/or otherwise attempted to settle the dispute between South Shore and G. Donaldson. Rosciti and AHR mistakenly believed that a $100,000 payment to G. Donaldson by South Shore, which Hanover acknowledges was made, occurred after a settlement agreement was reached between the two companies when, in fact, the payment was made out of funds received from the project owner before any settlement of the dispute was reached. Counsel for Rosciti and AHR has informed counsel for Hanover that the factual error surrounding the timing of the payment would be corrected along with any other modifications, if any, ordered by the Honorable Court.

## III. ARGUMENT

Rule 36 permits any party to serve upon any other party requests to admit "the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to the statements or opinions of fact or of the application of law to fact . . . ." Both courts and commentators have acknowledged, however, that Rule 36 does not permit a party to propound a request for admission of a pure question of law. *See* 8A Wright & Miller, *Federal Practice & Procedure: Civil*.2d § 2255 (1994) (noting that Rule 36, as amended, "does not allow a request for admission of a pure matter of law").

The exclusion of pure matters of law from the scope of Rule 36 requests was examined by the federal district court in *English v. Cowell*, 117 F.R.D. 132 (C.D.Ill. 1986),[1] a case that involved a dispute between a union member, the union local and its officers. In *English*, as in this case, the plaintiff propounded numerous requests for admission in which it asked the defendants to admit the

[1] A copy of the *English* case is attached hereto as Exhibit A.

existence of the statutes under which it brought its action. *See id*. at 135. The defendants, in turn, moved for a protective order with respect to those requests. *See id*. at 133.

In ruling on the defendants' motion, the court stated that "it seems that Plaintiff wants to elicit from the Defendants an admission that the Defendants are subject to the relevant statutes." Id. at 135. Such a request is improper, the court ruled, because it "calls for a legal conclusion and therefore it is beyond the scope of a request for admissions." *Id*. Accordingly, the *English* court granted a protective order to the defendants with respect to the improper requests. *See id*. at 137.

Other courts have also found requests for admissions intended to elicit a legal conclusion to be improper. *See, In re Olympia Holding Corp. v. Belt Concepts of Am.*, 189 B.R. 846, 852-53 (Bankr. M.D.Fla. 1995) (holding that requests for admission served by a plaintiff bankruptcy trustee that sought to force the defendant to admit or deny that it was a "small business" subject to the small business exception from freight undercharge liability contained in the federal Negotiated Rates Act were improper and the defendant could not be compelled to admit or deny them);[2] *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Company, Inc.*, 130 F.R.D. 92, 96 (N.D. Ind. 1990) (holding that plaintiff was not required to substantively respond to requests for admission that sought to have plaintiff admit or deny the validity of patent claims, which represented a legal conclusion).[3]

In this matter, Hanover has propounded two such requests for admissions. First, Request for Admission 7, which asks Rosciti and AHR to admit or deny whether or not a "duty" existed to post the bond requested by Hanover. Rosciti and AHR have admitted that they did not post the collateral requested by Hanover. However, since Hanover did not provide any definition of the word "duty"

[2] A copy of the *Olympia Holding Corp.* case is attached hereto as Exhibit B.

[3] A copy of the *Golden Valley Microwave Foods* case is attached hereto as Exhibit C.

for Rosciti and AHR to use as a reference for their answers they are unable to answer the question. Additionally, whether or not an actual duty existed is indeed a conclusion of law for the court to decide. Furthermore, Rosciti and AHR have maintained throughout this action that their belief was that their duty to post any security changed when Hanover's own actions caused South Shore to become unable to fulfill its obligations under the bond, as they had agreed to indemnify Hanover for the inability of South Shore to pay caused through means other than Hanover's direct actions.

Similarly, Hanover propounded Request for Admission 8, which asked if the failure of Rosciti and AHR to post collateral when demanded by Hanover constituted a "default" of the Indemnity Agreement. Again, Hanover does not define the term "default" in order for Rosciti and AHR to base their answers upon a common understanding of the term. Additionally, whether or not Rosciti and AHR were in "default" when Hanover changed the nature of the agreement by causing South Shore to become insolvent and thereby unable to fulfill its obligations under the bonds is a question of law which Rosciti and AHR cannot answer.

With regards to Hanover's remaining objections for Requests for Admissions 10-17 and the corresponding Interrogatories, Hanover's objection is that they are merely not satisfied with the reasons for the defenses asserted by Rosciti and AHR. Rosciti and AHR have maintained throughout this entire action that the same set of circumstances gave rise to the various defenses they have asserted. There is a valuable purpose served by having civil litigants plead alternative defenses which may be legally inconsistent. *Mathews v. United States*, 485 U.S. 58, 99 L.Ed.2d 54, 70, 108 S.Ct. 883 (1988). Allowing a tort defendant to claim both that he owed no duty of care to the plaintiff, but that if he did, he met that duty, preserves possible alternative defenses under which the defendant is entitled to relief. *Id.* It prevents formalities of pleadings, or rigid application of legal

doctrines, from standing in the way of the equitable resolution of a civil dispute. *See generally* 2A J. Moore, J. Lucas, & G. Grotheer, *Moore's Federal Practice* ¶ 8.32, pp. 8-224—8-229 (2d ed. 1987). Rosciti and AHR aver that the supporting facts that they provided in their responses set forth their reasoning for asserting those defenses, regardless of whether or not those defenses are inconsistent with one another. Rosciti and AHR set forth the facts upon which they were relying to support their defenses, which all center around the fact that Hanover instructed the owners of the two projects to cease all further payments to South Shore, which Hanover has admitted, and the cessation of income caused South Shore to become insolvent. The fact that Hanover simply does not like the fact that AHR and Rosciti are basing their defenses, whether inconsistent or consistent with each other, on the same operative set of facts and circumstances does not mean that those responses are invalid. Hanover's Motion to Compel seems to suggest that Rosciti and AHR need to have different facts and evidence for each of the different defenses, which is not required. Rosciti and AHR are not merely repeating the same facts for each defense, but aver that those same facts set forth the basis for each one of their affirmative defenses to which they are entitled. Thus, to the extent that Hanover believes the facts supporting the defenses raised by Rosciti and AHR are not sufficient to satisfy the legal standard of proof required, then Hanover would be entitled to prevail at a trial should Rosciti and AHR fail to meet their burden of proof; however, Rosciti and AHR reasonably believe in good faith that the facts as stated support all of the defenses they have raised and have answered Admissions and Interrogatories 10-17 in accordance with their good faith beliefs.

## IV. CONCLUSION

WHEREFORE, for the aforementioned reasons, Rosciti and AHR respectfully pray that this Court deny Hanover's Motion to Compel Rosciti and AHR to provide more complete answers to

interrogatories and motion to determine sufficiency of their responses to requests for admissions, that this Court deny Hanover's request for award of attorneys' fees, pursuant to Rule 37 of the Federal Rules of Civil Procedure, and that this Court award to Rosciti and AHR such other further relief as this Court may deem fair, just and reasonable.

Respectfully Submitted,
HENRY V. ROSCITI JR. and AHR,
Defendants

By their Counsel:

/s/ *Paul J. Moretti Sr.*

Paul J. Moretti Sr., Esq. (#7433)
Tillinghast Licht, LLP
10 Weybosset St.
Providence, Rhode Island 02903
401-456-1200 (Office)
401-456-1210 (Fax)
pmoretti@tllaw.com

**Certificate of Service**

______I certify that all parties have consented that all papers required to be served were served electronically on Mach 14, 2008, on the following parties:

Kevin C. Cain, Esq. - kcain@peabodyarnold.com
John P. Connelly, Esq. - jconnelly@peabodyarnold.com
Ronald Ritland, Esq. - rritland@peabodyarnold.com
Christopher Mulhearn, Esq. - cmulhearn@frlawri.com

and by First Class Mail to the following:

Jonathan Savage, Esq.
Schechtman, Halperin Savage, LLP
1080 Main St.
Pawtucket, RI 02860

/s/ *Paul J. Moretti Sr.*

**@PFDesktop\::ODMA/MHODMA/TLSDMS.TLSLAW.COM;imanage;458613;1**