UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP<br>Plaintiff<br><br>v.<br><br>ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION<br>Defendants | CIVIL ACTION NO. 1:06-cv-00276-T-LDA |

**AFFIDAVIT OF JOSEPH P. QUINN**

I, Joseph P. Quinn, do on oath hereby depose and say:

1. I am a bond claim attorney in the Bond Department at Hanover Insurance Group ("Hanover"). I am currently responsible for the bond claims relating to South Shore Utility Corporation ("South Shore"). I am familiar with the facts of this case and with the above law suit.

2. In October of 2005, I received a law suit served on Hanover in the case of G. Donaldson Corporation ("G. Donaldson") v. South Shore and Hanover, filed in Rhode Island Superior Court, claiming $530,000 for material and labor G. Donaldson had provided South Shore on a project Hanover bonded for South Shore commonly known as the Pawtucket Water Treatment Project ("Pawtucket Project"). In addition, in December 2005, I received a written notice from Earth Tech, Inc. ("Earth Tech"), the project manager on the Pawtucket Project, that G. Donaldson had made a claim with it for non-payment by South Shore.

3. In December of 2005, after G. Donaldson moved for default of Hanover due to South Shore's failure to accept Hanover's tender of defense and defend it in this matter, I retained the services of the law firm of Peabody & Arnold LLP to defend Hanover in response to

**EXHIBIT E**

the G. Donaldson suit. An attorney for that firm, Ronald Ritland, was chiefly responsible for the representation of Hanover in this matter. At all times, Mr. Ritland acted under my direction and as Hanover's attorney in defending Hanover in response to the suit.

4. At the end of May 2006, Mr. Ritland forwarded to me documents obtained by him from the attorney for G. Donaldson pursuant to a document deposition he had conducted with Earth Tech. My recollection is that these materials included a series of correspondence between Earth Tech and South Shore, whereby Earth Tech sought to force South Shore to pay G. Donaldson as Earth Tech had paid South Shore for G. Donaldson's work.

5. During March of 2006, I received a claim notice directed to Hanover and South Shore, among others, from an attorney for Vellano Bros., Inc., a supplier of South Shore on the Pawtucket Project, in the amount of $755,000. I investigated that claim by contacting Vellano Bros. and South Shore and by retaining an accountant to investigate and verify the claim submitted by Vellano Bros. In addition, I asked Mr. Ritland to inquire, through the attorneys for South Shore, whether South Shore acknowledged this claim or disputed it. At all times, Mr. Ritland acted only at my direction in doing this.

6. At my direction, Mr. Ritland sent a letter dated March 17, 2006 to the attorney for South Shore and the individual indemnitors, demanding $1.3 million in collateral on behalf of Hanover, which was the approximate total of claims submitted by G. Donaldson and Vellano Bros. at that time.

7. At my direction, Mr. Ritland forwarded separate letters to Earth Tech and Amtrak (an owner on a bonded South Shore project commonly known as Freight Rail Improvements) dated March 21, 2006, demanding that each party not release contract funds to South Shore without Hanover's prior written consent on the Pawtucket and Amtrak projects, respectively.

8. In early April 2006, I retained a construction consultant, Cashin, Spinelli, & Ferretti to investigate the work to be completed on the Pawtucket and Amtrak projects and to

assist in arranging with Earth Tech and Amtrak the completion of South Shore's work on both projects. In that regard, Cashin personnel John McManus and Michael Anderson were in almost daily contact with the personnel of Earth Tech and Amtrak from the beginning of April to mid-May, 2006 in these endeavors.

9. On July 19, 2006, at my direction, Mr. Ritland attended a meeting with me at the Earth Tech job site trailer on the Pawtucket Project to assist in the settlement negotiation conference with Earth Tech's personnel, including Paul DeLong, Ed Belleflur and its counsel, Bruce Bean.

10. At no time during the events referenced above or at any other time was Mr. Ritland authorized by Hanover to undertake any actions that were not first discussed and approved by me or my supervisor, Robert Grennan. Mr. Ritland, at all times in this matter, acted solely as the retained attorney for Hanover and was never authorized to commit Hanover to any action without my prior approval and direction. At no time did Mr. Ritland act as anything other than a spokesman for Hanover in this matter.

Signed under pains and penalty of perjury this 11th day of April, 2008.

Joseph P. Quinn

680552_1
2114-92646