UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP<br>Plaintiff<br><br>v.<br><br>ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION<br>Defendants | CIVIL ACTION NO. 1:06-cv-00276-T-LDA |

**REPLY OF PLAINTIFF HANOVER INSURANCE GROUP TO OBJECTION OF DEFENDANT ANTHONY ROSCITI, JR. AND SHANNON ROSCITI TO HANOVER'S MOTION FOR PROECTIVE ORDER AND FOR ORDER QUASHING SUBPOENA**

Plaintiff Hanover Insurance Group ("Hanover") submits the following in reply to the Objection of Defendants Anthony Jr. and Shannon Rosciti ("Roscitis").

**Roscitis' Objection is untimely**

Hanover's motion was filed with the Court on April 11, 2008. Under R.I. U.S. Dist. Ct. Rule 7(b)(1), Roscitis had until April 28, 2008 to file its objection to the motion. This was clearly delineated in the electronic docketing sheet for 06-276, entry no. 56 and 06-392, entry no. 43. Roscitis forwarded the objection to Hanover's counsel at 6:24pm on April 30, 2008.

Under Fed. R. Civ. P. 6(b)(1), after the time to file has expired, upon motion by the party failing to act, the court has discretion to allow the late filing where there has been excusable neglect. In this case, Roscitis did not seek leave of this Court by filing a motion to extend the time. They merely filed their objection late. Further, from review of decisions under this Rule, it is clear the court will find excusable neglect only where there is good faith inadvertence and absence of prejudice to the other party. *Carpe v. Aguila*, 224 FRD 454 (W.D. Mo. 2004). In

this case, the timing of the filing of the objection mere hours before the hearing must be considered an intentional ploy to rob Hanover of a reasonable amount of time to adequately review and respond to Roscitis' objection. As such, good faith is lacking and this action is prejudicial to Hanover's rights. Hanover respectfully requests Roscitis' objection not be considered in deciding Hanover's motion.

**Ritland's affidavit avers no communications with Amtrak or Earth Tech**

Assuming the court considers this late-filed objection, the threshold question in this matter should be "were there any communications during this period about which the Roscitis could question Attorney Ritland?" Ritland's affidavit clearly states he had no contact with either Amtrak or Earth Tech personnel during the period from January 1, 2006 to March 31, 2006, other than to send a letter to each dated March 21, 2006. [1] This averment under oath is neither contradicted nor mentioned by Roscitis in their objection. The deposition of Hanover's Quinn demonstrates Quinn did not recall if Ritland had any communications with Earth Tech and Amtrak during this period. Hanover's Grennan was not asked specifically in his deposition about Ritland's communications during the time period in question. In his deposition, Delong of Earth Tech recalled that the first contact from any Hanover representative was after the March 21, 2006 letter and came first from a Hanover employee. Simply stated, the deponents had trouble remembering communications Ritland had with Earth Tech and Amtrak because they did not occur during the period in question.

**Roscitis have not met their burden under *Shelton* or *Begosian***

[1] Hanover notes Roscitis now expand the time period during which they would ask Ritland about communications with Amtrak and Earth Tech to April 30, 2006, despite the fact, during the depositions with Hanover's Quinn and Earth Tech's DeLong, all questions concerned communications from January 1 to March 30.

The Roscitis acknowledge in their objection that the law set forth in the *Shelton v American Motors Co.*, 805 F.2d 1323 (8th Cir. 1987) is controlling in this matter. In addition to *Dunking Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208 (P.R. 1998), the 1st Circuit Court of Appeals has adopted not only the *Shelton* disfavor for this practice, but also the criteria the party seeking the deposition must meet. Begosian v. Woloohojian Realty Corp., 323 F. 3d 55, 66 (1st Cir. 2003). The Roscitis have failed in this case to meet this heavy burden.

The Roscitis first must demonstrate that no other means exist to obtain the information than to depose opposing counsel. In their objection, Roscitis argue, as the recollections of Hanover in-house claim attorneys Quinn and Grennan during their depositions were not entirely certain on the extent of Hanover's communications with Amtrak and Earth Tech, this some how translates to a conclusion that Attorney Ritland is the only person who can speak to these communications. This argument fails for a number of reasons.

In the first instance, Roscitis' recitation of the deposition testimony is incomplete, inaccurate and out of context. Quinn testified he was in contact with Earth Tech directly concerning this matter. Quinn Deposition at pgs. 26, 27, 36. He did not testify, as Roscitis claim, that Ritland was the "point person" for Hanover in advising Amtrak and Earth Tech to cease payments to South Shore. He stated he decided for Hanover that the March 21, 2006 letters should issue. Quinn Deposition at pg. 84. Neither Quinn nor Grennan testified Ritland was the only contact for Hanover with Earth Tech and Amtrak. In fact, Quinn repeatedly testified that he did not recall whether Ritland was in contact at all with either during the period in question. Quinn Deposition at 85, 89, 90, 91, 92, 94. DeLong testified that he recalled no communication from any Hanover representative prior to March 21, 2006. DeLong Deposition at pgs. 37-43.

Further, the Roscitis have not demonstrated they made any effort to obtain the same information from any of a number of sources available to them.

1. They made no effort to seek information, via deposition or document request, from any Amtrak representatives on any communications with Hanover during the period in question.

2. They did not seek information from other professionals Hanover retained to deal with the claims of Amtrak and Earth Tech, including the construction consultant, Cashin Spinelli, which firm Mr. DeLong and Mr. Quinn specifically stated was on the project on behalf of Hanover during the time period in question.

3. They deposed and had the opportunity to ask DeLong all questions concerning this matter.

4. To the extent DeLong was not involved in communications or could not recall them, many other representatives of Earth Tech were identified by DeLong or otherwise to the Roscitis. DeLong testified there were seven people on the job site for Earth Tech. This includes Edward Bellefleur who was charged with dealing with claims of South Shore's subcontractors and suppliers. According to DeLong, Bellefleur was involved in many of the meetings involving South Shore and Hanover. Also, Earth Tech's in-house counsel, Bruce Bean, was in communication with Hanover and Ritland during the time the Earth Tech project was in claim.

4. Roscitis made no effort to subpoena documents bearing on these communications from Amtrak or Earth Tech (despite being advised specifically by DeLong that he was in possession of all communication and other file materials relating to the Pawtucket Project).

5. Despite producing its entire non-privileged file to Roscitis, they have made no effort to consult those documents from Hanover to obtain the information they seek, despite the fact Mr. Quinn of Hanover referred to these documents on numerous occasions at his deposition.

Secondly, the information sought must be crucial to Roscitis' preparation of their case. With no further explanation, the Roscitis merely conclude this information is "necessary, and indispensable, to the Roscitis Counterclaim." Objection, pg. 4. They argue they need to inquire of Ritland the "specifics of certain communications and/or events that gave rise to and/or resulted from the generation of those specific documents." Objection at pg. 3. Their affirmative defenses to Hanover's claims, as well as their claims in their suit against Hanover, all hinge on one letter Hanover sent to Amtrak and to Earth Tech, both dated March 21, 2006, asking each to pay no further funds to South Shore without Hanover's prior written consent. They claim this was wrongful and obviates Hanover's claim under the agreement. Whether that defense/claim is viable given the Indemnity Agreement and case law is a legal question. Questions of Hanover's trial counsel on what may have lead up to these letters or resulted from them does not impact this question. Even if it does, as related above, the personnel for Earth Tech and Amtrak could have provided the same information as Ritland, if indeed he had communications with them.

Thirdly, if Roscitis argue that they want Ritland's mental impressions of these alleged discussions only, or the thought process leading to the letters, this information is privileged under work product protections. As made clear in Ritland's and Quinn's affidavits, Ritland acted only as Hanover's counsel in this matter.

Hanover respectfully requests that the protective order be issued and the subpoena be quashed. As stated by the *Shelton* and *Begosian* courts, seeking depositions from opposing counsel should be disfavored and allowed only in the rare instances when the movant meets its heavy burden. As demonstrated here, the practice is subject to abuse and leads often to harassment of the other party, both of which demeans the litigation process and further burdens an already burdened judiciary.

Respectfully submitted,

THE HANOVER INSURANCE GROUP,

By its attorneys,

/s/ Kevin C. Cain

Kevin C. Cain, Esq. (#3960)
Ronald E. Ritland, Esq. (*pro hac vice*)
PEABODY & ARNOLD, LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100

DATED: May 1, 2008

**CERTIFICATION**

I, Kevin C. Cain, hereby certify that I caused to be served by electronic means (ECF) a copy of the within document on the 1st of May, 2008 to the following:

Joseph DeAngelis
jdeangelis@tllaw.com

Christopher M. Mulhearn
cmulhearn@frlawri.com

/s/Kevin C. Cain
Kevin C. Cain