**PEABODY & ARNOLD LLP**
COUNSELLORS AT LAW

30 ROWES WHARF, BOSTON, MA 02110
[617] 951.2100 FAX [617] 951.2125

BOSTON, MA PROVIDENCE, RI

RONALD E. RITLAND
[617] 951.2011
rritland@peabodyarnold.com

March 17, 2006

**BY FACSIMILE and REGULAR MAIL**

Andrew W. Daniels, Esq.
Hinckley Allen Snyder, LLP
28 State Street
Boston, MA 02109

**BY REGULAR MAIL**
Anthony F. Rosciti, Jr.
Shannon Rosciti
15 Morgan Court
Lincoln, RI 02865

Henry V. Rosciti, Jr.
1324 Chopmist Hill Road
North Scituate, RI 02857

AHR Utility Company
Anthony F. Rosciti, Jr.
44 Maria Avenue
Johnston, RI 02919

Re: Principal: South Shore Utility Contractors, Inc.
**DEMAND UNDER AGREEMENT OF INDEMNITY**

Dear Mr. Daniels and Indemnitors:

As you know, this office represents Hanover Insurance Company which provided bonds on behalf of South Shore Utility Contractors on various jobs. On the Pawtucket Water Treatment Facility – Package #2 project, on which Hanover provided performance payment bonds on behalf of South Shore Utility Contractors to O. Ahlborg and Sons, Inc., subcontractor G. Donaldson Construction Company, Inc. filed suit against South Shore Utility Contractors and Hanover Insurance Company under the payment bond. According to the suit, Donaldson claims it is due $536,012.22 plus attorneys fees, interest and costs under the payment bond for failure of South Shore to pay that amount when due for labor and material that G. Donaldson supplied to this project.

Quinn Affidavit
EXHIBIT 6

As you know, this claim went into suit in Rhode Island and is currently pending there. Per Mr. Daniels' January 6, 2006 letter, you acknowledged on behalf of South Shore that $389,242.45 was presently due. Based on the quantities listed, it appears South Shore was claiming that it disputed $87,900.12 of the amount claimed. Despite Hanover's request that South Shore make payment on the undisputed amount, South Shore has not done so.

Hanover is also on notice of an additional claim from Verano Bros. for $755,725.01. This is on a different phase of the project named above and Hanover provided a separate payment and performance bond on behalf of South Shore Utility Contractors. Although Mr. Daniels promised to forward documentation detailing South Shore's dispute of this claim, South Shore has not done so, despite timely request by Hanover. As you can see, these claims in total are approximately $1.3 million.

Mr. Daniels indicated that, although South Shore was experiencing a cash flow problem, it this week received an arbitration award of $800,000 on the Yankee project, apparently a project that South Shore did in Connecticut. I demanded on behalf of Hanover that South Shore immediately use that money to make payment of the G. Donaldson claim in an amount that would get it settled. When I discussed this matter further with Mr. Daniels yesterday, he indicated that South Shore did not plan to make full payment of the G. Donaldson claim. In fact, it planned to offer an initial amount in, his words, "the six figures". South Shore planned to offer G. Donaldson payments over time, assuming an agreed amount on the claim could be reached. As I explained, this is unacceptable to Hanover.

This will also confirm my request to meet with your client at its offices in Rhode Island at 10:00 am on Tuesday, March 21, 2006 to discuss these matters further. As I indicated, I will also want to go through completely the finances for South Shore Utility Contractors and the indemnitors.

I have attached to this letter a copy of the Agreement of Indemnity which South Shore and the individual indemnitors executed when applying for bonds from Hanover. As you can see from the agreement, paragraph 2 sets forth the indemnitor's obligation to indemnify the surety for various claims, including the claims described above, in addition to attorney fees, interest, court costs, etc. Paragraph 3 also obligates the indemnitors to hold the surety harmless from any and all claims made under the bonds, including the claims listed above. As part of that agreement to hold the surety harmless, indemnitors agreed to place in the hands of the surety funds deemed satisfactory by the surety to hold it harmless and to hold those funds as collateral until the claims are satisfied.

In addition, paragraph 5 provides an assignment by the indemnitors to the surety of various assets, including all monies received on any contract "whether bonded or unbonded" in which any of the indemnitors have an interest. In addition, by paragraph 7 of the indemnity

agreement, the indemnitors agree to hold funds due or to become due under any bonded project in trust for payment of all obligations under the bond or the underlying contract. In other words, as the contractor receives funds on bonded projects, it will pay subcontractors and suppliers as the amounts become due. Finally, indemnitors agreed to give the surety "full and free access" to the books and records of South Shore and the indemnitors until such time as all exposure under the bonds that the surety wrote for the contractor have been extinguished or terminated.

Accordingly, Hanover Insurance Company hereby demands that the indemnitors indemnify and hold Hanover Insurance Company harmless from any and all loss, costs, attorney fees, court costs, etc. associated with it having written bonds on behalf of South Shore Utility Contractors. Specifically, Hanover demands that the indemnitors immediately place collateral in the surety's hand in the amount of $1.3 million.

In addition, the surety demands that South Shore Utility Contractors immediately act to use the arbitration award listed above and any and all other assets available to it to satisfy the claims listed above that cannot be disputed in good faith. If the claims are disputed in good faith, the indemnitors should set forth all bases for dispute, with all supporting documentation. In addition, Hanover demands that South Shore Utility Contractors and its indemnitors through their respective attorneys cooperate fully with Hanover in its investigation of these claims and Hanover's request for "full and free access to the Indemnitor's books and records..." Without limitation, this includes making all books and records for me next Tuesday as Hanover's representative.

Please contact me at your earliest convenience and in no event later than 10 days from the date of this letter to advise Hanover of your intentions concerning these indemnity obligations and demand from Hanover. Failure on your part to respond pursuant to your obligations under the indemnity agreement may leave Hanover no other option than to take such action as it deems appropriate. I look forward to hearing from you all.

Very truly yours,

Ronald E. Ritland

Enclosure

Cc: Joseph Quinn, Esq.

PABOS2:RRITLAN:634413_1
2114-91630