**ANSWER 3**

No answer required.

**Admission No. 4**

Rosciti and AHR did not post $1.3 million in collateral as requested in the letter attached to Hanover's complaint as Exhibit B.

**RESPONSE 4**

Rosciti and AHR admit that they did not post the collateral as requested.

**Interrogatory No. 4**

If the request for admission is denied, please state in detail the basis for denial.

**ANSWER 4**

No answer required.

**Admission No. 5**

South Shore Utility Corporation, Inc. ("South Shore") did not resolve the claims submitted by G. Donaldson by making payment to G. Donaldson as set forth in the letter from South Shore's attorney to the attorney for G. Donaldson dated March 22, 2006 and proposed Judgment Stipulation, both of which are attached to these Requests and Interrogatories as Exhibit 1.

**RESPONSE 5**

Unable to Admit or Deny.

**FIRST AMENDED RESPONSE 5**

Admitted only to the extent that South Shore was prevented from making **all** of the payments to G. Donaldson pursuant to the aforementioned agreement solely because of interference from



Statement of Facts
EXHIBIT B

Hanover, but to the knowledge and belief of Rosciti and AHR a $100,000 payment was made to G. Donaldson as the initial payment in satisfaction of the agreement with G. Donaldson.

**<u>SECOND AMENDED RESPONSE 5</u>**

Admitted.

**Interrogatory No. 5**

If the request for admission is denied, please state in detail the manner in which South Shore resolved the G. Donaldson claim including but not limited to:

1. Details of all communications Rosciti, AHL and/or South Shore had with G. Donaldson concerning resolution.

2. Terms of the agreement between the parties that constituted its resolution.

3. Terms of payment by South Shore to G. Donaldson to resolve the claim.

4. Details of all payments made by South Shore or any other party to G. Donaldson to resolve its claim including check number, date of check, amount of check.

**<u>ANSWER 5</u>**

Objection in that this interrogatory asks for information pertaining to transactions between South Shore and G. Donaldson to which Rosciti and AHR were not parties and would call for speculation on the part of Rosciti and AHR. Without waiving said objection, Rosciti and AHR aver that they were not involved with the dealings between South Shore and G. Donaldson regarding the matter referred to in Request for Admission No. 5 and Interrogatory No. 5 so as to be in a position to admit or deny Request for Admission No. 5 or provide the information requested in Interrogatory No. 5.

Furthermore, without waiving said objection, Mr Anthony Rosciti, President of South Shore and AHR, avers that a settlement acceptable to G. Donaldson was negotiated through South Shore's counsel and Mr. Jerry Visconti of G. Donaldson, and the terms of which are in the possession of South Shore.

**FIRST AMENDED ANSWER 5**

On or about March 22, 2005, a settlement acceptable to G. Donaldson was negotiated through South Shore's counsel, Mr. Joseph Ferrucci, and Mr. Jerry Visconti of G. Donaldson, whereby South Shore agreed to pay G. Donaldson $100,000 upon execution of the settlement agreement, $100,000 within thirty (30) days thereafter and the balance within another thirty (30) days. Shortly after the settlement agreement was negotiated, Hanover interceded with the owners of the Pawtucket and Amtrak projects and stopped all income to South Shore which prevented South Shore from making payments to G. Donaldson as agreed. It is the belief of Rosciti and AHR that a $100,000 payment was made to G. Donaldson as the first payment in accordance with the settlement agreement and had Hanover not interfered with the flow of payments from the Pawtucket and Amtrak projects, South Shore would have made the remaining payments to G. Donaldson as agreed. Records of the $100,000 payment are in the hands of South Shore's receiver and Rosciti and AHR have no detailed information regarding the check number and date, but said information will be found in those records. Therefore, South Shore had settled its dispute with G. Donaldson by negotiating a settlement, agreeing to terms of payment and making the initial $100,000 payment as required; however, it was prevented from making any further payments to G. Donaldson pursuant to the terms negotiated between the parties when Hanover intervened and stopped all income to South Shore rendering it incapable of making payments to G. Donaldson as agreed.

**SECOND AMENDED ANSWER 5**

N/A

**Admission No. 6**

Despite receiving payments from the general contractor on the Pawtucket Project for labor and/or materials supplied to the Pawtucket Project by G. Donaldson pursuant to a contract with South Shore, South Shore did not make any payments to G. Donaldson from payments received.

**RESPONSE 6**

Unable to admit or deny.

**FIRST AMENDED RESPONSE 6**

Denied.

**SECOND AMENDED RESPONSE 6**

Denied.

**Interrogatory No. 6**

If the request for admission is denied, set forth in detail the basis for the denial, including but not limited to detailing all payments made by South Shore to G. Donaldson by check number, date, amount and date delivered to G. Donaldson.

**ANSWER 6**

Objection in that this interrogatory asks for information pertaining to transactions between South Shore and G. Donaldson to which Rosciti and AHR were not parties and would call for speculation on the part of Rosciti and AHR. Without waiving said objection, while Rosciti and AHR were not involved with the negotiations between South Shore and G. Donaldson regarding the matter referred to in this Request and Interrogatory, based upon information and belief of Rosciti and AHR,