Supplemental Response to Request for Admission No. 10: The Roscitis can neither admit nor deny this Request for Admission No. 10 insofar as this Request for Admission No. 10 does not define the term "duty", which is a legal term of art and has a specific legal connotation, and they are lay persons. Notwithstanding, the Roscitis admit that they did not post collateral in response to Hanover's so-called March 15, 2006 "demand".

Second Supplemental Response to Request For Admission No. 10: The Roscitis deny that Hanover made a written demand, dated March 15, 2006, upon the Roscitis to "post" additional collateral. Indeed, the so-called "demand" that the Roscitis believe Hanover is referring to is dated March 17, 2006. The Roscitis admit that Paragraph 3 of the Indemnity Agreement purportedly obligates the Roscitis to hold Hanover harmless and, further, to pay to Hanover funds in an amount deemed satisfactory by Hanover to hold Hanover harmless. Said paragraph also provides that Hanover may hold any such funds as collateral until such time as any so-called bond claims, *to wit*, the claims of G. Donaldson and Vellano Brothers, respectively, are resolved and/or satisfied. Even more, the Roscitis admit that they did not complete performance and/or pay any funds to and/or "post" any collateral with Hanover in response to Hanover's March 17, 2006 "demand".

Interrogatory No. 10: If the request for admission is denied, please set forth in detail the basis for the denial, including the identity of all documents, communications, and materials supporting this denial.

Answer to Interrogatory No. 10: N/A.

Request for Admission No. 11: Despite the provisions of the Indemnity Agreement and demand by Hanover dated March 15, 2006, the Roscitis failed and/or refused to post collateral in favor of Hanover.

Response to Request for Admission No. 11: Denied.

Supplemental Response to Request for Admission No. 11: The Roscitis admit that they did not post collateral pursuant to Hanover's March 15, 2006 "demand".

Interrogatory No. 11: If the request for admission is denied, please set forth in detail the basis for the denial.

Answer to Interrogatory No. 11: Pursuant to Hanover's request that the Roscitis "post" certain additional collateral in favor of Hanover, the Roscitis were endeavoring to do so when, at or about



Statement of Facts
EXHIBIT H

the same time, Hanover intentionally interfered with South Shore's direct contractual relationships with the project owners of the so-called Pawtucket Project and Amtrak Project, respectively, and directed said project owners to cease any further payments to South Shore, which said action(s) prevented the Roscitis' ability to secure and/or "post" the requested collateral in favor of Hanover.

Request for Admission No. 12: The Indemnity Agreement provides Hanover an assignment to all bonded contract funds upon default of any or all of the indemnitors of the Indemnity Agreement.
Response to Request for Admission No. 12: Objection. The Roscitis can neither admit nor deny this Request for Admission No. 12 insofar as it calls for a legal conclusion or opinion, which the Roscitis are not qualified to give. Moreover, the terms and conditions of the so-called Indemnity Agreement appended to Hanover's Complaint as Exhibit A speak for themselves.
Supplemental Response to Request for Admission No. 12: The Roscitis can neither admit nor deny this Request for Admission No. 12 insofar as this Request for Admission No. 12 fails to define "default", which is a legal term of art and has a specific legal connotation, and they are lay persons. Moreover, the Roscitis reassert and incorporate herein by reference their prior response to this Request for Admission No. 12.
Second Supplemental Response to Request for Admission No. 12: Admitted.
Interrogatory No. 12: If the request for admission is denied, please set forth in detail the basis for the denial.
Answer to Interrogatory No. 12: N/A.

Request for Admission No. 13: The failure of the Roscitis to post collateral and/or otherwise indemnify Hanover constituted their default of the Indemnity Agreement.
Answer to Admission No. 13: Objection. The Roscitis can neither admit nor deny this Request for Admission No. 13 insofar as it calls for a legal conclusion or opinion, which the Roscitis are not qualified to give. Moreover, the terms and conditions of the so-called Indemnity Agreement appended to Hanover's Complaint as Exhibit A speak for themselves.
Supplemental Response to Request for Admission No. 13: The Roscitis can neither admit nor deny this Request for Admission No. 12 insofar as this Request for Admission No. 13 fails to define "default", which is a legal term of art and has a specific legal connotation, and they are lay

persons. Moreover, the Roscitis reassert and incorporate herein by reference their prior response to this Request for Admission No. 13.

Second Supplemental Response to Request for Admission No. 13: Denied.

Interrogatory No. 13: If the request for admission is denied, please set forth in detail the basis for any denial, including why the Roscitis signed a letter dated April 15, 2007 acknowledging their default, which letter is attached as Exhibit C to Hanover's Complaint in this matter.

Answer to Interrogatory No. 13: N/A.

Supplemental Answer to Interrogatory No. 13: The term "default" is not defined in the Indemnity Agreement. Moreover, the Roscitis believe that they were prevented from completing any performance with respect to Hanover's March 17, 2006 "demand", and thus, did not "default" under any purported obligations set forth in the Indemnity Agreement. However, the Roscitis admit that they had not yet completed performance pursuant to Paragraphs 2 and 3, respectively, of the Indemnity Agreement as "demanded" by Hanover in its March 17, 2006 correspondence as of April 13, 2006, the date each of the Roscitis signed the so-called Acknowledgement of Voluntary Default. Simply put, the Roscitis signed the Acknowledgement of Voluntary Default on or about April 13, 2006, because: (1) the same was presented to them in a pre-prepared form, on South Shore letterhead by Hanover and/or its counsel, Attorney Ritland, (2) South Shore was already rendered insolvent as a result of Hanover's actions, *to wit*, its unauthorized direction to the project owners of the so-called Pawtucket project and Amtrak project, respectively, that no further contract funds should be released and/or paid to South Shore; and (3) Hanover and/or Attorney Ritland advised A. Rosciti that unless the April 13, 2006 Acknowledgement of Voluntary Default was executed Hanover would not honor and/or award to the Rosciti Construction the previously secured and/or arranged for "takeover" contract with respect to the Pawtucket project. Thus, in their mind, the Roscitis had no choice but to sign the April 13, 2006 Acknowledgement of Voluntary Default.

Request for Admission No. 14: In resolving claims under the payment and performance bonds that Hanover provided South Shore on the Pawtucket and Amtrak Projects, Hanover did not engage in fraud or collusion with any other owners or obliges of these respective Projects.

Response to Request for Admission No. 14: Denied.

Interrogatory No. 14: If the request for admission is denied, please set forth in detail any and all facts supporting the claim that Hanover engaged in fraud or collusion with any of the owners or obligees in resolving the claims under the performance and payment bonds which Hanover issued on the Pawtucket and Amtrak projects.

Answer to Interrogatory No. 14: In or about February and March, 2006, without either the consent or authorization of South Shore, Hanover embarked on a course of conduct and dealing with the project owners for the so-called Pawtucket Project and Amtrak Project, respectively, wherein it negotiated with said project owners, and, in doing so interfered with, notwithstanding South Shore's direct contractual relationship with said project owners, and directed the project owners to cease making any further payments to South Shore relative to the subject projects. This course of conduct and dealing commenced and occurred well in advance, and, in any event, approximately thirty (30) days prior to, South Shore's execution of a direction of payment letter in favor of Hanover with respect to this Pawtucket Project and Amtrak Project, respectively.