**ANSWER 8**

Rosciti and AHR aver that they were attempting to raise funds sufficient to post collateral requested by Hanover, but Hanover caused owners of both the Pawtucket Project and Amtrak Project to cease all payments to South Shore which severely impacted the ability of Rosciti and AHR to secure necessary collateral. Furthermore, Rosciti and AHR signed the letters only after Hanover promised to allow Rosciti Construction to complete the projects and minimize the exposure and risk to Hanover.

**AMENDED ANSWER 8**

None required.

**Admission No. 9**

In resolving claims under the payment and performance bonds for the Pawtucket and Amtrak Projects, Hanover did not engage in fraud or collusion with either the owners or obligees on these respective Projects.

**RESPONSE 9**

Objection, calls for a legal conclusion which Rosciti and AHR are not qualified to give. Furthermore, the Defendants are unable to admit or deny because discovery to lead evidence required to prove fraud or collusion is still ongoing.

**AMENDED RESPONSE 9**

Denied

**Interrogatory No. 9**

If the request for admission is denied, please set forth in detail the facts supporting Rosciti and AHR's claim that Hanover engaged in fraud or collusion with the obligees or owners in resolving the payment and performance bond claims on the Pawtucket and Amtrak Projects.

**ANSWER 9**

Rosciti and AHR aver that they are unable to admit or deny this request since discovery is still ongoing and depositions which would reveal the information requested have not yet been obtained.

**AMENDED ANSWER 9**

Rosciti and AHR aver that Hanover contacted with the owners of both projects to settle claims under the construction bond and made the cessation of any and all future payments to South Shore a condition for said payments made by Hanover under its bond obligation. Both Hanover and the owners of the projects knew or should have known that cutting off all of the income to South Shore would cause it to become unable to pay its debts as they came due. Rosciti and AHR maintain that under the terms of the Agreement of Indemnity, while Hanover had a right to make payment to satisfy claims under the bond, it did not have the right to stop all income to South Shore, which it knew or should have known would cause South Shore to be unable to pay any of its debts as they came due.