UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

| | |
|---|---|
| THE HANOVER INSURANCE GROUP<br>Plaintiff<br><br>v.<br><br>ANTHONY F. ROSCITI, JR., SHANNON B. ROSCITI, HENRY V. ROSCITI, JR. and AHR UTILITY CORPORATION<br>Defendants | CIVIL ACTION NO. 1:06-cv-00276-T-LDA |
| ANTHONY F. ROSCITI, JR.; and SHANNON B. ROSCITI<br>Plaintiffs<br><br>v.<br><br>THE HANOVER INSURANCE GROUP;<br>Defendant | CIVIL ACTION NO. 1:06-cv-00392-T |

**PLAINTIFF HANOVER INSURANCE GROUP'S REPLY TO THE OBJECTION OF ANTHONY F. ROSCITI, JR., AND SHANNON B. ROSCITI TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Hanover Insurance Group ("Hanover") hereby files the following reply to the objection of Anthony F. Rosciti, Jr., and Shannon B. Rosciti ("Roscitis") to its summary judgment motion.

## ARGUMENT

**1. Roscitis failed to establish any genuine issue of material fact.**

By rule, a party opposing a summary judgment motion must "set out specific facts showing a genuine issue for trial. If ... (it) ... does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

Roscitis begin their Objection by conceding that there exists no genuine issue of material fact with regard to Hanover's summary judgment motion on its Complaint. Although the Roscitis then claim that "genuine issues of material fact do, in fact, exist with respect to the Roscitis' Counterclaim" (Roscitis' Objection, Pg. 2), no where in their Objection, Memorandum of Law, Statement of Undisputed Facts[1], or Reply to Hanover's Statement of Undisputed Facts do they detail what they are. [2]

Roscitis focus their attention exclusively on two letters dated March 21, 2006 that Hanover sent to two owners on two projects which Hanover bonded on behalf of South Shore Construction, Inc. ("South Shore"), as the sole bases for their set-off claims against Hanover under their Complaint and Counterclaim. Hanover does not dispute that these letters were sent. Therefore, the letters create no genuine issue of material fact.

**2. Hanover is entitled to judgment as a matter of law on the Roscitis' claims/counterclaims.**

In its memorandum of law, Hanover argues in detail why the Roscitis' causes of action in their Complaint and Counterclaim fail (Hanover Memorandum of Law, pp. 7-20). In response, the Roscitis have not responded in kind by either detailing the specific bases upon which each cause of action rests, or by specifically contradicting Hanover's analysis that its actions, as surety, were legally justified under these facts. Roscitis merely repeat their vague assertions that Hanover's action in sending the March 21, 2006 letters to the owners on the two bonded projects of South Shore was some how wrongful and caused South Shore damage. In doing so, despite the fact that

---

[1] To the extent necessary, Hanover disputes all of Roscitis' Statements of Undisputed Facts as argumentative.

[2] In fact, in their Response to Hanover's Statement of Undisputed Facts, the Roscitis admit 22 of the 33 distinct fact statements, fail to deny (because of lack of knowledge or because the statements are not directed to them) another six of the statements, and either assert immaterial details or insert legal arguments in response to the remaining five statements.

this case hinges on the legal interpretation of its relevant paragraphs, Roscitis completely ignore the Indemnity Agreement.

Even assuming Roscitis set forth a colorable argument for their claims against Hanover based on these letters, their argument is flawed as based on at least two faulty factual assumptions. First, Roscitis argue that the March 21, 2006 letters cut off the very funds that South Shore needed to meet its contractual obligations on both projects, and, inferentially, there existed at the time sufficient funds in the contracts or otherwise to meet all of South Shore's past, present and future obligations on these two projects. To the contrary, at the time Hanover sent the March 21, 2006 letter to the owner on the Pawtucket Project, Earth Tech, Inc. ("Earth Tech"), the undisputed records demonstrate that there were insufficient contract funds available to even pay for completing the remaining work on that project, much less pay the past bills South Shore had incurred, but refused to pay.[3] In response, Roscitis cannot argue that the amount charged by Rosciti Construction to complete the remaining work on the Pawtucket Project was anything other than reasonable because Roscitis claim that Anthony Rosciti personally arranged for the completion of this work directly with Rosciti Construction. (Roscitis' Statement of Undisputed Facts, ¶ 21).

[3] The payment records which Hanover submitted in support of its summary judgment motion (e.g., Exhibit 10 and 11 to the Quinn Affidavit) and which the Roscitis admit, clearly shows that Hanover paid Earth Tech $200,000 on the Pawtucket Project to resolve its claim under the Hanover performance bond. (Hanover Stmt. Of Undis. Facts ¶ 25; Roscitis' Response to Hanover's Stmt. Of Undisp. Facts). Hanover was forced to pay this amount because the bid to complete the work by Rosciti Construction was $3,636,081, compared to $3,325,126 in remaining contract funds. Based upon some surety defenses, Hanover was able to reduce the claim of Earth Tech from over $300,000 to $200,000. Either way, the point is clear that the remaining performance obligations alone (ignoring the past due payment obligations) were greater than the remaining funds. Roscitis also admit that South Shore was paid by Earth Tech for the work of South Shore subcontractor, G. Donaldson, on the Pawtucket Project, but failed to pay it $530,000 of the money it owed G. Donaldson from these payments. (Hanover Statement of Undisputed Facts ¶¶ 6 and 8; Roscitis' Response to Hanover's Stmt. of Undisp. Facts).

Therefore, as of March 17, 2006, when Hanover demanded collateral from the indemnitors, South Shore had already squandered at least $1.2 million of funds paid to it by Earth Tech on the Pawtucket Project. No coincidentally, this was the exact amount Hanover demanded as collateral from the indemnitors.

Accordingly, at the time Hanover sent the March 21, 2006 letters to the owners on the bonded projects, South Shore, Roscitis and the rest of the indemnitors were jointly and severally in default of the Indemnity Agreement due to South Shore's failure to hold the contract funds received on the Pawtucket Project in trust in favor of Hanover and in payment of its subcontractors and suppliers. (Hanover Statement of Undisputed Facts, ¶ 9, and see Indemnity Agreement, ¶7). In addition, the indemnitors were in default of the Indemnity Agreement as of March 21, 2006 due to their failure to post collateral in the amount of $1.2 million in response to Hanover' demand dated March 17, 2006.[4]

The second faulty assumption is that, after Hanover sent the March 21, 2006 letters, there was nothing South Shore or the indemnitors could do to resolve the matter other than acknowledge their collective default by letters of April 13, 2006 and for South Shore to go into receivership. By their terms, Hanover's letters to the owners dated March 21, 2006 requested that the owners pay no contract funds to South Shore without Hanover's prior written consent. After these letters were sent, South Shore and the indemnitors were afforded ample opportunity to clear their defaults of nonpayment to G. Donaldson and Vellano Brothers by either paying them the amounts owed or, if

[4] The Roscitis argue that Hanover did not give them sufficient time between demanding collateral on March 17, 2006 and sending its letters to the owners on March 21, 2006. In doing so, Roscitis ignore the Indemnity Agreement, Paragraph 3, which requires the indemnitors to make payment to the surety of collateral "as soon as liability exists or is asserted against the surety, whether or not the surety shall have made any payment therefor." (Hanover's Stmt. of Undisp. Facts, ¶ 4(b)). Thus, Roscitis had an obligation to post collateral with Hanover when these claims were made. The suit by G. Donaldson was filed against Hanover in October of 2005 and the claim by Vellano Brothers was submitted to Hanover by letter dated March 3, 2006.

the claims were disputed, placing with Hanover collateral in the amount of $1.2 million. If the indemnitors had done this, Hanover would have immediately written to the owners on the bonded projects again and consented to release of the contract funds to South Shore so that it could complete its contractual obligations. Of course, the indemnitors did not pay the claims or post the collateral because the money available to pay these claims had already been diverted by South Shore from the Pawtucket Project and the indemnitors claim they did not otherwise have funds available to them to pay the claims or post collateral. (Hanover's Statement of Undisputed Facts, ¶¶14-16).

Ultimately, the only effect of Hanover sending the letters of March 21, 2006 was to mitigate its own loss under the performance and payment bonds. Even so, as pointed out above, the contract funds then remaining on the Pawtucket Project, plus another $200,000 of Hanover's funds, all went to completing South Shore's remaining work. Overall, Hanover suffered a loss totaling $1,795,679.54 in completing the work and paying South Shore's past due bills. (Hanover's Statement of Undisputed Facts, ¶25). On April 13, 2006, faced with the reality that there remained this large deficit on the Pawtucket Project even after the remaining contract funds were spent, the indemnitors signed a voluntary letter of default to Hanover and directed the owners to make remaining contract fund payments at Hanover's direction on both projects.

Accordingly, Roscitis' claim that the March 21, 2006 letters were wrongful and damaging to them is baseless. Because of this and because of the arguments set forth in Hanover's summary judgment motion, Hanover is entitled to judgment against the Roscitis on its Complaint and Counterclaim, and against the Roscitis on its Complaint and Counterclaim against Hanover, all as a matter of law. Accordingly, Hanover respectfully requests that its summary judgment motion be granted on both actions referenced above and that Hanover have judgment against the Roscitis in

the amount of $2,112,008.81, plus accrued interest, together with such other relief the Court deems just and proper.

Respectfully submitted,

THE HANOVER INSURANCE GROUP,

By its attorneys,

/s/ Ronald E. Ritland
Ronald E. Ritland, *pro hac vice*
Kevin C. Cain, #3960
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
[617] 951.2100

Dated: August 7, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the within document was served via electronic mail on the following on this 7th day of August, 2008:

Joseph D'Angelis – jdeangelis@tllaw.com
Christopher Mulhearn – cmulhearn@frlawri.com

/s/ Ronald E. Ritland
Ronald E. Ritland